## BYARS v. UNITED STATES.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 72.   Argued November 29, 1926.—Decided January 3, 1927.

1. A state search warrant, based on an information alleging that affiant "has good reason to believe and does believe defendant has in his possession" intoxicating liquors and instruments and materials used in the manufacturing of such liquors, can not, under the Fourth Amendment, sustain a federal search of defendant's house and seizure therein of counterfeit internal revenue stamps.  P. 29.
2. Evidences of crime discovered by a federal officer in making a search without lawful warrant may not be used against the victim of the unlawful search where a timely challenge has been interposed.  P. 29.
3. Constitutional provisions for the security of person and property are to be liberally construed, and " it is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon."  P. 32.
4. When a federal officer participates officially with state officers in a search, so that in substance and effect it is their joint operation, the legality of the search and of the use in evidence of the things seized, is to be tested, in federal prosecutions, as it would be if the undertaking were exclusively his own.  P. 32.

4 F. (2d) 507, reversed.

CERTIORARI (268 U. S. 684) to a judgment of the Circuit Court of Appeals which affirmed a conviction of Byars for unlawful possession of counterfeit " strip " stamps.

*Mr. Claude R. Porter* for the petitioner, submitted.

*Mr. Gardner P. Lloyd,* Special Assistant to the Attorney General, with whom *Solicitor General Mitchell* was on the brief, for the United States.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

Petitioner was convicted in the federal district court for the southern district of Iowa upon two counts for unlaw-

fully having in his possession with fraudulent intent certain counterfeit strip stamps of the kind used upon whiskey bottled in bond. The stamps were admitted in evidence over the objection of petitioner that they had been obtained by an unlawful search and seizure. A timely motion previously made by the petitioner to return or impound the stamps was overruled. The judgment of conviction was affirmed by the court of appeals. 4 F. (2d) 507.

The stamps were found in executing a search warrant issued by the judge of a state municipal court and addressed to " any peace officer of Des Moines, Polk County, Iowa," directing search for intoxicating liquors and instruments and materials used in the manufacture of such liquors. The information upon which the search warrant was issued states only that affiant " has good reason to believe and does believe the defendant has in his possession " such intoxicating liquors, instruments and materials. The warrant clearly is bad if tested by the Fourth Amendment and the laws of the United States. C. 30, Title XI, §§ 3–6, 40 Stat. 217, 228–229; c. 85, Title II, § 2, 41 Stat. 305, 308. See *Ripper* v. *United States*, 178 Fed. 24, 26; *United States* v. *Borkowski*, 268 Fed. 408, 410–411; *United States* v. *Kelly*, 277 Fed. 485, 486–489. Whether it is good under the state law it is not necessary to inquire, since in no event could it constitute the basis for a federal search and seizure, as, under the facts hereinafter stated, it is insisted this was.

Nor is it material that the search was successful in revealing evidence of a violation of a federal statute. A search prosecuted in violation of the Constitution is not made lawful by what it brings to light; and the doctrine has never been recognized by this Court, nor can it be tolerated under our constitutional system, that evidences of crime discovered by a federal officer in making a search without lawful warrant may be used against the victim of

the unlawful search where a timely challenge has been interposed. *Weeks* v. *United States*, 232 U. S. 383, 393; *Gouled* v. *United States*, 255 U. S. 298, 306; *Amos* v. *United States*, 255 U. S. 313; *Silverthorne Lumber Co.* v. *United States*, 251 U. S. 385, 391; *Agnello* v. *United States*, 269 U. S. 20, 33.

The warrant directs the officer to search certain described premises and, if any of the liquors, instruments or materials set forth in the information are found, to seize the same and keep them until final action be had thereon. It was put into the hands of Mr. Densmore, a local officer in charge of the night liquor bureau of the police station in Des Moines, Iowa, and he, together with three others, proceeded to make the search in circumstances which can best be shown by quoting from the testimony given upon the hearing of the motion to impound or return the property seized. Mr. Densmore testified as follows:

"As I came down stairs, I asked the Captain about Mr. Adams who was there, and I asked him to go with me. Mr. Adams is the Federal Prohibition Agent, stationed here in Des Moines, Iowa, an officer of the government, operating under the Treasury Department. I met him after the warrant had been sued out, and asked him to go with me. I had the warrant at that time. It was in the police station of the city that I met Mr. Adams and requested him to come along. I had not discussed this case with Mr. Adams before that. He went with me from the city building on the search. As far as I know, he did not have any warrant or any authority to go into that residence other than the authority that I may have given him under the warrant I had. The search and seizure was made entirely upon the authority of the warrant that I had obtained at the City Hall. Arriving at the residence, I assigned each man a room. I assigned Adams a room. We found no intoxicating liquors there. The only thing that we found that we took were the stamps in-

volved in this case. Mr. Taylor found part of them, and Mr. Adams found part of them. Mr. Adams kept the stamps he found in his possession and those found by Mr. Taylor were turned over to him right at that time. The ones that Adams found and the ones that were given to him were taken possession of by Adams right there in the house of A. J. Byars, immediately after the service. Neither myself or any of the other city officers had possession of those stamps after that evening. There was never any prosecution attempted in the city courts or such courts as I was connected with so far as these stamps were involved."

Mr. Adams, the federal prohibition agent, testified:

" I remember assisting in the search of the residence of A. J. Byars on the 22nd day of April, 1924. Officers Densmore, Taylor, DeHaven and Davis were with me. I met them in the Captain's office at the police station in the city of Des Moines and accompanied them to make the search. I had no authority for going into the house other than the search warrant that the officers had secured from the state authorities. The only authority that I had for going into the house of Mr. Byars was on account of the search warrant that Mr. Densmore had. I searched the kitchen. I found some of the stamps that were involved in this case there in the kitchen. I took possession of them then and there, and have retained them ever since. I have retained the stamps that I found and those that were handed me there in the house. I was not present with Mr. Taylor in the room when he found the stamps, but they were brought to me in the dining room by Mr. Taylor, and I took possession of them then and there, and I have retained possession of all the stamps from that time until this. They were never delivered to the state officers or used by them. I do not know of any violation of any state law that they could be used for. I knew there was no state law governing the possession of

these stamps, and as a Federal Officer, I took possession of what I found, and those found by the State Officer, and have had them in my possession ever since and receipted to the Police officers at the Station that evening after the return from the raid, for the stamps found."

While it is true that the *mere* participation in a state search of one who is a federal officer does not render it a federal undertaking, the court must be vigilant to scrutinize the attendant facts with an eye to detect and a hand to prevent violations of the Constitution by circuitous and indirect methods. Constitutional provisions for the security of person and property are to be liberally construed, and " it is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon." *Boyd* v. *United States,* 116 U. S. 616, 635; *Gouled* v. *United States, supra,* p. 304.

The attendant facts here reasonably suggest that the federal prohibition agent was not invited to join the state squad as a private person might have been, but was asked to participate and did participate as a federal enforcement officer, upon the chance, which was subsequently realized, that something would be disclosed of official interest to him as such agent. The house to be searched contained only four rooms—a dining room, a kitchen and two bedrooms. We are not prepared to accept the view that the local officer thought a force of four men would be insufficient to search these limited premises; and it is significant, in that connection, that he did not ask his superior officer for additional help, but inquired particularly for Adams, who, he knew, was the federal agent. The stamps found were not within the purview of the state search warrant, nor did they relate in any way to a violation of state law. Those found by the agent were held by him as of right and without question; those found by the state officer were considered by both the local officer

in charge and the federal agent as things which concerned the federal government alone and then and there were surrendered to the exclusive possession of the federal agent,—a practical concession that he was present in his federal character. We cannot avoid the conclusion that the participation of the agent in the search was under color of his federal office and that the search in substance and effect was a joint operation of the local and federal officers. In that view, so far as this inquiry is concerned, the effect is the same as though he had engaged in the undertaking as one exclusively his own. Similar questions have been presented in a variety of forms to the lower federal courts, but nothing is to be gained by attempting to review the decisions, since each of them rests, as the present case does, upon its own peculiar facts. But see and compare *Flagg* v. *United States,* 233 Fed. 481, 483; *United States* v. *Slusser,* 270 Fed. 818, 820; *United States* v. *Falloco,* 277 Fed. 75, 82; *Legman* v. *United States,* 295 Fed. 474, 476–478; *Marron* v. *United States,* 8 F. (2d) 251, 259; *United States* v. *Brown,* 8 F. (2d) 630, 631.

We do not question the right of the federal government to avail itself of evidence improperly seized by state officers operating entirely upon their own account. But the rule is otherwise when the federal government itself, through its agents acting as such, participates in the wrongful search and seizure. To hold the contrary would be to disregard the plain spirit and purpose of the constitutional prohibitions intended to secure the people against unauthorized official action. The Fourth Amendment was adopted in view of long misuse of power in the matter of searches and seizures both in England and the colonies; and the assurance against any revival of it, so carefully embodied in the fundamental law, is not to be impaired by judicial sanction of equivocal methods,

which, regarded superficially, may seem to escape the challenge of illegality but which, in reality, strike at the substance of the constitutional right.

*Judgment reversed.*