## FOWLER v. UNITED STATES.
### No. 4818.

Circuit Court of Appeals, Seventh Circuit.
Dec. 29, 1932.

John A. Royse, of Indianapolis, Ind., for appellant.

George R. Jeffrey, U. S. Atty., and Alexander G. Cavins, and Telford B. Orbison, Asst. U. S. Attys., all of Indianapolis, Ind.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

ALSCHULER, Circuit Judge.

This appeal from judgment of appellant's conviction for violation of the National Prohibition Act (27 USCA) presents the single question of the admissibility of evidence secured by search and seizure of appellant's property under a purported state search warrant which was admittedly void.

It is clear that, if the federal authorities sustained no relation to the unlawful search and seizure, the evidence of what was thereby revealed and taken was admissible in the federal prosecution.

As was said in the somewhat similar case of Byars v. United States, 273 U. S. 28, 47 S. Ct. 248, 250, 71 L. Ed. 520: "Similar questions have been presented in a variety of forms to the lower federal courts, but nothing is to be gained by attempting to review the decisions, since each of them rests, as the present case does, upon its own peculiar facts."

The "peculiar facts" of the instant case are in small compass and not in serious dispute.

For a number of years the Indianapolis police department maintained a "booze squad" whose duties related specially to violations of liquor laws. The squad co-operated with the federal prohibition director's office, which was short of men. It was the long practice for one or more of the squad to call almost daily at the federal prohibition office, and there to confer in reference to violations of the National Prohibition Law in and about the city. The squad, while employed and paid by the city, was always at the service of the prohibition department and at its call, and at times when not co-operating with the federal department did other police work.

It had for years been the general understanding and practice between the local police and the federal prohibition officers that when the police squad made seizures of liquor or arrests they would submit the cases to the prohibition department, which had the first option of prosecuting such of them as it desired. The practice had been that if the seizure of liquor was small the state would take the case, and if it was large the federal authorities would take it. It was not the general practice for both the police squad and the federal officers actually to participate in the making of the same raid or seizure; but the raid would be made in the light of the above understanding, and the liquor seized, together with the person arrested, would be held by the police until the case could be submitted to the federal authorities, and, if the quantity of liquor seized was large, the case was customarily turned over to them for prosecution.

The police did not notify the federal authorities before taking out the invalid search warrant against appellant and making this

search and seizure, and no federal officer actually participated in the search. After the seizure was made and appellant was arrested, he was booked with the state authorities for the purpose of holding him until communication and conference was had with the prohibition officers. The seizure being of an unusually large quantity of liquor, the prosecution of the case was promptly taken over by the federal prohibition department.

This long-time definite understanding and practice between the police and the federal prohibition department tends strongly to indicate a delegation to the police of federal authority for making the very seizures which the federal officers stood ready to take over and prosecute as their own if only the raid yielded a sufficient quantity of liquor to make it seem worthy of federal prosecution. At any rate, the federal taking over of the prosecution in accordance with such long-existing understanding and practice can be deemed a ratification by the federal authority of the means whereby the contemplated searches and seizures were undertaken and made. Through such understanding and practice the prohibition authorities said in effect to the police squad, "The case will be ours if the yield proves large, and yours if it is small," suggesting the mighty hunter whose aim was so true that he would "hit it if it's a deer and miss it if it's a calf."

It would be hardly consistent with a proper regard for the protection accorded by the Fourth Amendment to permit any department of the federal government in this manner to set the amendment at defiance. The Supreme Court has frequently and emphatically. declared that the amendment should be liberally construed in favor of the individual. Boyd v. United States, 116 U. S. 616, 635, 6 S. Ct. 524, 29 L. Ed. 746; Byars v. United States, 273 U. S. 28, 32, 33, 47 S. Ct. 248, 249, 71 L. Ed. 520; Marron v. United States, 275 U. S. 192, 196, 48 S. Ct. 74, 72 L. Ed. 231; Go-Bart Importing Co. v. United States, 282 U. S. 344, 357, 51 S. Ct. 153, 75 L. Ed. 374; United States v. Lefkowitz, 285 U. S. 452, 464, 52 S. Ct. 420, 76 L. Ed. 877; Sgro v. United States, 53 S. Ct. 138, 77 L. Ed. —— (December 5, 1932).

A quite recent and timely "recurrence to the fundamental principles of civil government" by that court appears in the Byars Case in the words: "While it is true that the *mere* participation in a state search of one who is a federal officer does not render it a federal undertaking, the court must be vigilant to scrutinize the attendant facts with an eye to detect and a hand to prevent violations of the Constitution by circuitous and indirect methods. Constitutional provisions for the security of person and property are to be liberally construed, and 'it is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon.' * * * The Fourth Amendment was adopted in view of long misuse of power in the matter of searches and seizures both in England and the colonies; and the assurance against any revival of it, so carefully embodied in the fundamental law, is not to be impaired by judicial sanction of equivocal methods, which, regarded superficially, may seem to escape the challenge of illegality but which, in reality, strike at the substance of the constitutional right."

We conclude that appellant's timely motion to suppress the evidence afforded by the search and seizure was erroneously denied, and that the evidence was improperly admitted on the trial.

The judgment of the District Court is reversed, and the cause is remanded with direction to sustain appellant's motion to suppress the evidence.