### REEVE v. HOWE et al.

### HELLMAN v. SAME.

#### Nos. 840, 841.

District Court, E. D. Pennsylvania.

May 3, 1940.

**620**

Philip Dorfman, of Philadelphia, Pa., for Reeve.

Saul C. Waldbaum, both of Philadelphia, Pa., for Hellman.

Robert E. Lynch, of Washington, D. C., for Howe & Hurley.

William A Gray, of Philadelphia, Pa., for Granitz.

John Patrick Walsh and A. J. Goldin, both of Philadelphia, Pa., for Dogole.

WELSH, District Judge.

"* * * The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. * * *" Article IV, Amendments of Constitution of the United States.

The only question before us for decision is whether or not the above Constitutional safeguards and guarantees have been violated. Partisanship and political philosophies have no place or bearing in the discussion. Those matters can very well be left to their proper avenues of expression and control.

The question thus having been placed squarely before a Federal Court for decision requires a full, accurate and complete statement of the facts and the law involved. The Court cannot be otherwise than exceedingly mindful of the fundamental principles of the case thus submitted to it for its decision. The comments of men high in public life, the discussion of the subject in the public press and magazines, and the hundreds of letters on the subject coming to the chambers of the Court all indicate the tremendous feeling that the case has aroused, the state of the public mind due to existing world conditions, and the confused thought as to what the real underlying principles of the case are. We could scarcely discharge our duty in the circumstances without taking due notice of all these factors, and without exercising a wider latitude in our treatment of the problem than in the usual or ordinary case. Hence, we consider it advisable to state as clearly as possible the actual fundamental facts as we believe them to be. Also, the principles of law that govern and which we believe have governed from the time our country was founded, its Constitution adopted, and as this Constitution has been defined and interpreted by the Supreme

Court of the United States for over 150 years.

The Courts are concerned only with maintaining the sanctity of the safeguards of the Constitution of the United States. We feel that we should call attention to the exceedingly grave consequences of breaking down the applicable provisions of the Bill of Rights. It just so happens that the aggrieved parties in this case are apparently very much in the minority in our country. But their rights which they claim were invaded are rights that are sacred to all of us. All of our people have the right to form themselves into political parties and to have the free and untrammeled right to the press to promulgate their ideas. The collateral evidence shows that the offices of the political party and the newspaper known as the "American Free Press" were both raided and much property confiscated and taken away.

The Supreme Court of the United States in the case of Thornhill v. State of Alabama, 60 S.Ct. 736, 744, 84 L.Ed. ——, decided April 22, 1940, called the attention of our people to the fact that the Continental Congress itself as long ago as October 26, 1774, recognized the utmost importance of this fundamental doctrine in these words: "The last right we shall mention, regards the freedom of the press. The importance of this consists, besides the advancement of truth, science, morality, and arts in general, in its diffusion of liberal sentiments on the administration of Government, its ready communication of thoughts between subjects."

On April 2, 1940, the defendant George F. Hurley, a special investigator for a United States Congressional Committee known as the Dies Committee, made affidavit before Jacob Dogole, a magistrate of the City and County of Philadelphia, that, upon information and belief, matter of a seditious nature, banned by the Pennsylvania Act No. 275 of June 26, 1919, P.L. 639, as amended by the Act of May 10, 1921, No. 211, P.L. 435, 18 P.S.Pa. §§ 121, 122, was to be found at the headquarters of the Communist Party at No. 250 South Broad Street, Philadelphia, and at the headquarters of the International Workers Order, 810 Locust Street, Philadelphia, and praying, under the authority of said Act of Assembly, for the issuance of warrants, authorizing the search and seizure of said seditious matter.

The search and seizure warrants were issued by Magistrate Dogole, and though by him directed for execution to "any police officer of the City and County of Philadelphia", were nevertheless delivered by the Magistrate to the defendant Hurley. Pursuant thereto, the defendants Hurley and Howe, accompanied by Lieutenant Granitz and a squad of some thirty Philadelphia police officers, proceeded to the said headquarters of the Communist Party aforesaid at 250 South Broad Street, Philadelphia, and to the headquarters of the International Workers Order at 810 Locust Street, Philadelphia, and searched and seized and carried away various property, which, however, has since been returned and is now in the custody of the police authorities of the City of Philadelphia.

It transpired that the headquarters of the Communist Party at 250 South Broad Street were in the apparent occupancy or charge of one Carl Reeve, Educational Director of the Communist Party in Philadelphia.

On April 3, 1940, the said Carl Reeve, in his representative capacity as Educational Director of the Communist Party, filed in this Court his Complaint, as above captioned, praying for an order (a) quashing the search and seizure warrant issued by Magistrate Dogole; (b) enjoining and restraining the above-named defendants, and each of them, from using, copying, or otherwise interfering with the seized property, or making public any of its contents, and (c) directing the return of the seized property. (The prayer for an order restraining the use or publication of the seized property was subsequently formally withdrawn before us by counsel for Carl Reeve, complainant.)

On April 12, 1940, Motions to Dismiss the Complaint for want of jurisdiction in this Court, and for failure to state a claim entitling the complainant to the relief prayed for, were filed by counsel for the defendant Albert A. Granitz, and by counsel for Jacob Dogole. Briefs for and against the Motions to Dismiss have since been submitted, and are now before us. As the warrants for the search and seizure both at 250 South Broad Street and at 810 Locust Street were identical in content, what we shall say of the one directed to 250 South Broad Street may be regarded as equally applicable to the other addressed to 810 Locust Street.

Upon the question of our jurisdiction, we note, first, that although the warrant was issued by a Magistrate of the City of Philadelphia, nevertheless the application for the warrant was solicited from the Magistrate alike by defendants Hurley and Howe (admittedly the agents of the Dies Committee, which is admittedly a Federal Investigating Committee), and that the application was actually signed and sworn to by Hurley.

We note, further, that though the warrant was directed for execution to "any police officer of the City and County of Philadelphia", nevertheless it was delivered by the Magistrate to Hurley, who, with Howe and Lieutenant Granitz and a squad of thirty City Police, proceeded to 250 South Broad Street and executed the warrant at that place.

We note, further, that though under the terms of the warrant, return of the warrant and of the seized property was to be made to the Magistrate forthwith, or at any rate no later than within ten days, nevertheless Hurley and Howe took immediate possession of the seized property, and transported it to Washington, and there delivered it to the Dies Committee, who, having first made such use of the seized property as it saw fit to make, returned it into the custody of Magistrate Dogole.

█ Under the narrated facts, we are of the opinion that the search and seizure was in reality a Federal undertaking, taken under the chance that possibly something would be disclosed of official Federal interest. The fact that the undertaking was the joint undertaking of the local and Federal officers, is immaterial. The effect is the same as though the Federal agents had engaged in the undertaking as one exclusively their own. Byars v. United States, 273 U.S. 28, 32, 47 S.Ct. 248, 71 L.Ed. 520.

"Where a search has been participated in or instigated by Federal officers, under such circumstances as to stamp it as a joint enterprise * * * the validity of the search and seizure must be tested by the Federal Law". Cornelius on Search and Seizure, Sec. 17, p. 62.

█ Was the search and seizure invalid? That is to say, was the supporting warrant itself supported by sworn facts competent to be submitted to a jury, as reasonably affording probable cause for believing that seditious or subversive matter was to be found at the headquarters of the Communist Party at 250 South Broad Street? This is the standard by which the validity of the search and seizure is to be tested. Grau v. United States, 287 U.S. 124–128, 53 S.Ct. 38, 77 L.Ed. 212.

█ Tested by this standard, we note, first, that the affidavit of defendant Hurley upon which the warrant issued sets forth only Hurley's belief, "upon information received", that certain persons, among them Carl Reeve, were in possession of and were concealing seditious records and literature, in violation of the Pennsylvania Act of Assembly, upon the premises 250 South Broad Street. Nothing more. Nevertheless Magistrate Dogole issued the warrant which (as we have said), though directed to "any police officer of the City and County of Philadelphia", the Magistrate delivered over to Mr. Hurley. Magistrate Dogole admits he made no inquiry at all as to the source of Mr. Hurley's information. Lieutenant Granitz was not present at the time of the delivery, and the Magistrate testified that he did not know how Lieutenant Granitz got possession of the warrant, if indeed he got possession of it at all. It is, however, admitted that Hurley and Howe, accompanied by Lieutenant Granitz and a squad of police, approximately thirty in number, proceeded to 250 South Broad Street, and ransacked and cleaned out practically the entire contents of the headquarters of the Communist Party, not even omitting matters relating to housing construction,—the personal property of Reeve, the Complainant here, who is a member of the Advisory Committee of the Philadelphia Housing Authority under appointment of the President of that Authority, the Hon. Frank Smith, nor omitting even the Communist Party's nomination papers for election to the State Legislature (nomination papers the last day for filing which at Harrisburg was the next day following their seizure and transportation to Washington, with the result that unless some other means might be found it would be too late to do so), nor omitting even a letter file containing the names and addresses of furniture dealers, the property of one Esther Segal who, it is our understanding, was not an employee of the Communist Party.

We are not, however, greatly concerned with the actual property seized and transported to Washington. Whether it was seditious or not seditious has no bearing on the legality of the search and seizure. An unlawful search and seizure would not be

made lawful no matter what evidence of an incriminating nature was found among the archives. The authenticity and genesis of any alleged seditious literature may now be difficult to legally prove in view of the circumstances surrounding their seizure and transport, and handling by so many persons involved. However, should this matter be material and relevant it may be legally inquired into later. We go to the affidavit of Mr. Hurley upon which the warrant issued, and find (as we have said) that it is stated only that the affiant "upon information received believed that books, records, writings, publications, printing, cartoons, or utterances, documents or writings", of a seditious or subversive nature were on the premises to be searched. Such an affidavit was plainly inadequate. The belief that the statements in an affidavit to a warrant are true, is insufficient. Byars v. United States, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520. The Fourth Amendment of the United States Constitution, provides that: "* * * and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized".

It was also inadequate as tested by the Act of Congress of June 15, 1917, c. 30, title 11, § 3 (18 U.S.C.A. § 613), which provides that: "A search warrant can not be issued but upon probable cause, supported by affidavit, naming or describing the person and particularly describing the property and the place to be searched."

The affidavit being defective, it is unnecessary to consider the alleged defect in the warrant, for if the affidavit was defective, the warrant itself was without lawful foundation. Grau v. United States, 287 U.S. 124, 127, 53 S.Ct. 38, 77 L.Ed. 212. Being so, it is unnecessary to consider whether the warrant was good under the State law, since in no event could such warrant constitute the basis for the search and seizure here which was so palpably a Federal search and seizure. Byars v. United States, 273 U.S. 28, 29, 47 S.Ct. 248, 71 L.Ed. 520. It thus appears that the search and seizure was made without probable cause, and without any personal knowledge of the searching officers. As has been said by a high authority, no good reason exists why the right to be free from unreasonable search and seizure should not stand upon a parity today with freedom of religion, of speech, of the press and of assembly, as guaranteed by the Bill of Rights, inasmuch as all of these rights are of equal importance to the individual (Hague v. Committee, etc., 3 Cir., 101 F.2d 774, 787, per Biggs, C. J.). Protected from abridgment by the Federal Government by the First and Fourth Amendment, they are protected from abridgment by the States by the Fourteenth Amendment. 101 F.2d at page 788, citing Colgate v. Harvey, 296 U.S. 404, 428, 56 S.Ct. 252, 80 L.Ed. 299, 102 A.L.R. 54. The suit in question was brought by the Complainant to secure the protection and enforcement of civil rights guaranteed to him by our fundamental laws. The District Court has jurisdiction of the suit under Section 24(14) of the Judicial Code, 28 U. S.C.A. § 41(14).

■ Defendant claims that the complainant has no redress because he was acting as the officer of a corporation, and that a corporation is not within the protection of the Constitution. In the early days of our national life, when business was largely individual in character, or conducted by small groups of associates the artificial entity of the corporation was looked upon as being ouside the guarantees of the Constitution. But as we progressed to great corporate activities this view changed, and many years ago the Supreme Court of the United States declared that corporations were persons within the meaning of certain provisions of the Constitution. This interpretation was but a recognition by the highest Tribunal of the fact that man's rights, possessed as an individual, were not lost by reason of his associating himself with others in a corporate activity. It requires only casual reflection to appreciate how important this interpretation has been to our national life. Men have been encouraged to combine their fortunes, their brains, and their energies, knowing full well that they forfeited no rights possessed by them in their individual capacity. Corporations have been declared persons within the meaning of the Constitution in certain respects. The mere fact that Mr. Reeve, the complainant, happened to be a member of an unincorporated society, and its duly accredited officer, in the lawful possession, custody and control of its property and paraphernalia does not remove him from the protecting fold of the Constitution. If he became the victim of a raid or of process prohibited by the Constitution relief should be given by a Federal Court.

 Counsel for defendants further allege that the complainant, as an individual, has no legal personal title to the papers and records seized due to the fact that he was also the officer of the corporation. Is this claim warranted within the real meaning of the applicable constitutional provision? Are the "effects" merely physical objects or do they include something more intangible, and possibly far more real and substantial. Is the individual "secure" in his person, if he is deprived of or denied the right to function according to the rational activities of the office òr station which he lawfully occupies. Man's life and his very being consists in his activities; he functions as Man in the realm of thought; in this he differs from the brute creation. Surely a civilization as wonderful as ours cannot limit or circumscribe the Constitutional guarantees of personal security within the limits claimed by the defendants. Furthermore, dispassionate reasoning must concede that the duly constituted corporate officer, having books, papers, records, money, and other property committed to his care for the proper use of which, within the scope of corporate powers he is personally responsible, has a "right" therein and thereto. We therefore cannot accept the claim of the defendants that they are free from the Constitutional command not to violate those rights. Let the seal of judicial approval be placed upon such Constitutional violations and liberty of the person, and liberty of religious and political thought and action will have vanished from our land.

Humanity can be no freer than its liberty to think. The search for good and the search for truth must be free for the mind of man to explore in all realms, Spiritual and physical, each man according to his light. Man's relation to his God, to his fellow-man, and to the State must ever be the subject of search and investigation. This is the liberty that the Constitution of the United States guarantees to its people. Any limitations of that liberty must be placed by the Sovereign will of the people, lawfully expressed and self-imposed, and not by the fiat of any branch of the Government, whether it be Executive, Legislative, or Judicial.

Eternal vigilance is the price of liberty. Our Government, through its proper agencies, has the power, the responsibility, and the duty of exercising such vigilance. When such vigilance is exercised within the limitations of the Constitutional safeguards all of our people will be found in sympathy.

The Motions to Dismiss the Complaint in the above-entitled proceedings are denied.