THE PEOPLE OF PUERTO RICO, Petitioner, *v.* DISTRICT COURT OF SAN JUAN, HON. LUIS R. POLO, JUDGE, Respondent; ALEJA ROMERO WIDOW OF ORTIZ, Intervener.

No. 1777. Argued December 1, 1948.—Decided December 3, 1948.

384

*Luis Negrón Fernández, Attorney General,* and *J. Rivera Barre-ras, Prosecuting Attorney,* for petitioner. *M. López Carrillo* and *B. Sánchez Castaño* for intervener.

MR. JUSTICE SNYDER delivered the opinion of the Court.

The district attorney filed an information against Aleja Romero vda. de Ortiz accusing her of having in her possession and in her house various articles which could be used in the operation of a *bolita* game, in violation of Act No. 220 Laws of Puerto Rico, 1948. These articles were seized when the house of the defendant was searched pursuant to a search warrant. The defendant filed a motion praying for the nullity of the warrant and the return of the articles. The district court entered an order granting the motion. We issued certiorari on petition of the *Fiscal* of this Court to review that order.

The district court held that the affidavit on which the warrant was based was insufficient on the ground that it merely stated the conclusions of the affiant and did not state any facts as required by § 505 of the Code of Criminal Procedure.

The affidavit reads in part as follows:

"That he [the affiant] knows of his own knowledge that Aleja Romero vda. de Ortiz, lives at Km. 4, Hm. 2, Carr. Bo. Isla Verde of Carolina, Puerto Rico, in a house made of cement, wood and zinc, painted white and yellow, having a balcony in the form of a marquee at the front and a door of glass and wood at the front, and having at the rear another small wooden

house used by the servants, the two houses being bounded on the South by the road, on the North by the beach and on the East and West by two concrete fences.

"That the affiant knows of his own knowledge and by investigations conducted and by personal observation that Aleja Romero vda. de Ortiz is owner, manager, director, of a clandestine lottery generally known as 'bolita' and 'bolipool', which she operates in that city and its barrios, that she prints and causes to be printed, tickets and slips of the said clandestine lotteries for distribution by her personally and by means of her agents and employees for pay to the public, knowing that the said tickets and slips form part of clandestine lotteries and represent shares or interest in the same, for which, in case one or more of the numbers win prizes, dividends or benefits are paid in money previously agreed between her and her clientele, and in order to carry on this business, she has in her aforesaid-described house, and in the same house she manipulates, distributes, sells, checks and issues, the said slips or tickets, and in order to carry on this illegal business she has and utilizes in her above-described house the following objects: lists of paper numbered with the numbers of the illegal game of 'bolita', tickets and slips of 'bolipool', pencils, money, lists of accounts related to the illegal game of 'bolita'.

"That the game of 'bolita' is played regularly every day and also on the days on which the Official Lottery of Puerto Rico and National Lottery of Santo Domingo, D. R., are played, the complainant [sic] doing that knowingly and voluntarily and with the express intention of violating the provisions of Act 220 of May 15, 1948, which declares the said clandestine lottery games a public nuisance.

"That the affiant has seen these illegal operations conducted by Aleja Romero vda. de Ortiz, on various occasions and the last time on 8-1-48, when various agents of the defendant delivered the accounts, money and paper, slips and tickets, representing shares and interest in the said clandestine lottery games, to the said Aleja Romero vda. de Ortiz."

We do not stop to determine if information obtained by "investigation" may be properly included in such an affidavit. Cf. *Grau* v. *United States*, 287 U.S. 124; *Byars* v. *United States*, 273 U.S. 28; Annotation, 74 A.L.R. 1418, 1490–98; Fraenkel, Concerning Searches and Seizures, 34 Harv.L.Rev.

361, 381–82; *People* v. *Capriles*, 58 P.R.R. 551, 561. Apart from this question, the statement in the second paragraph of the affidavit that the affiant knows of his own knowledge and by personal observation that the defendant is the owner, manager and director of a *bolipool* game is a mere conclusion. The affiant did not, as required by § 505, recite any facts which support the conclusion. The affidavit was therefore defective insofar as it was offered to show that the defendant was the owner, manager and director of a *bolipool* game.

The second paragraph also recites that the defendant printed tickets and had in her house lists, tickets and slips used to play *bolita*. If the affiant saw (*a*) the printing taking place at the defendant's house and (*b*) the lists, etc., being used in the house to play *bolipool*, those facts would be sufficient to justify issuance of the search warrant. However, the second paragraph is not as clear as it might be on this point and the case can be decided without resorting to the second paragraph. We therefore assume without deciding that (*a*) and (*b*) were not known to the affiant through personal observation and that these facts cannot be utilized to justify issuance of the warrant.

However, paragraphs 1, 3 and 4, when read together, recite that the affiant saw the defendant at the described house receiving accounts, money, papers, tickets and slips for a *bolipool* game. In *People* v. *Aybar*, 68 P.R.R. 6, we held that a substantially similar statement in an affidavit justified issuance of a search warrant. We reach the same result in this case. See also, *Steele* v. *United States No. 1*, 267 U.S. 498; *United States* v. *Esposito*, 45 F.Supp. 39 (Dist. Ct., Pa., 1942); *Jackson* v. *Commonwealth*, 282 S.W. 1058 (Ky., 1926); Annotation, 74 A.L.R. 1418, 1479 *et seq.*[1]

[1] In the *Aybar* case, after summarizing the contents of the affidavit at P. 9, we said that the affidavit was sufficient as it rested "on direct evidence of which [the affiant] had personal knowledge". To avoid any misinterpretation of the *Aybar* case, we point out that the first part of the affidavit in that case was defective in that, like the second paragraph

The remaining contentions of the defendant attacking the search warrant are frivolous and need not be considered in detail.

The order of the district court will be vacated and the case remanded for further proceedings.

of the affidavit herein, it recited conclusions unsupported by facts. However, we based our holding in that case on the description of the house seen by the affiant and on the last clause of the affidavit, in which the affiant recited what he saw taking place at the house. In that respect, the *Aybar* case and this case are substantially similar.