MILLS ET AL. *v.* LOUISIANA.

No. 74.  Argued April 22, 1959.—Decided June 8, 1959.*

*Eugene Stanley* argued the cause for petitioners in No. 74.  With him on the brief was *Albert B. Koorie.*

*Milo B. Williams* argued the cause and filed a brief for petitioner in No. 75.

*Michael E. Culligan,* Assistant Attorney General of Louisiana, and *J. David McNeill* argued the causes for respondent.  With *Mr. Culligan* on the brief were *Jack P. F. Gremillion,* Attorney General of Louisiana, and *Richard A. Dowling.*

·PER CURIAM.

The judgments are affirmed.  *Knapp* v. *Schweitzer,* 357 U. S. 371.

MR. JUSTICE BRENNAN joins the Court's opinion, reiterating his belief, expressed in *Knapp* v. *Schweitzer,* 357 U. S. 371, 381, that reconsideration of the holding in *Feldman* v. *United States,* 322 U. S. 487, is inappropriate in this case.  He also reiterates his belief that nothing

---

*Together with No. 75, *Mills* v. *Louisiana,* also on certiorari to the same Court.

in this decision forecloses reconsideration of the *Feldman* holding in a case presenting the issue presented by *Feldman*.

MR. CHIEF JUSTICE WARREN, with whom MR. JUSTICE BLACK and MR. JUSTICE DOUGLAS concur, dissenting.

In *Knapp* v. *Schweitzer*, 357 U. S. 371, the Court left open the question whether in the case of collaboration between state and federal officers a witness could successfully assert the federal privilege against self-incrimination in a state proceeding. In my view, that question should be answered here, for the records in these cases show such collaboration. Yet the majority of the Court ignores the question in affirming without opinion. Therefore, although I agree with and join the dissenting opinion of MR. JUSTICE DOUGLAS, I add these additional views.

The petitioners in these cases were held in contempt for failure to answer questions before a state grand jury investigating the bribery of police officials of New Orleans by persons conducting lottery operations within that city. From the nature of the questions asked petitioners, it is evident that they were suspected of engaging in lotteries and giving bribes. The District Attorney of the Parish of Orleans, under authority granted by state statute, offered petitioners full immunity from state prosecution for crimes, other than perjury, uncovered by the questioning. Nevertheless, petitioners refused to answer questions relating to bribery and their connections with lottery operations, pleading in justification of this refusal the federal privilege against self-incrimination.

The contempt proceedings and the state court reviews were had upon an agreed statement of facts. These stipulations recited that during the pendency of the state grand jury investigation "the Intelligence Division, Internal Revenue Service of the United States, the United States Attorney for the Eastern District of Louisiana and the

United States Grand Jury [had] been for several months and [were then] engaged in investigating some of the members of the New Orleans Police Department for income tax evasion, a felony under the laws of the United States." In addition, the parties agreed that these investigations were well publicized and that, at the time of the instant proceedings, a number of federal income tax indictments had been returned against police officers. Further, it was established that each of the petitioners had been requested to execute, and had executed, waivers of the statute of limitations on his federal tax liabilities for most of the years in question. Lastly, the parties stipulated:

> "That there has existed, and now exists [at the time of the state proceeding], cooperation and collaboration between the District Attorney for the Parish of Orleans and the United States Attorney for the Eastern District of Louisiana and the Internal Revenue Service of the United States of America and its investigators, as well as with the Police Bureau of Investigation of the City of New Orleans in reference to members of the New Orleans Police Department regarding public bribery and income tax evasion and that the Honorable Leon D. Hubert, Jr., District Attorney for the Parish of Orleans, has held conferences with the United States Attorney for the Eastern District of Louisiana regarding public bribery on the part of certain members of the New Orleans Police Department and income tax evasion, felonies under the law of the United States of America and the State of Louisiana."

In *Knapp* v. *Schweitzer, supra,* which decided that the federal privilege against self-incrimination may not ordinarily be raised in a state proceeding, the Court said:

> "Of course the Federal Government may not take advantage of this recognition of the States' autonomy

in order to evade the Bill of Rights. If a federal officer should be a party to the compulsion of testimony by state agencies, the protection of the Fifth Amendment would come into play. Such testimony is barred in a federal prosecution, see *Byars* v. *United States,* 273 U. S. 28. Whether, in a case of such collaboration between state and federal officers, the defendant could successfully assert his privilege in the state proceeding, we need not now decide, for the record before us is barren of evidence that the State was used as an instrument of federal prosecution or investigation. Petitioner's assertion that a federal prosecuting attorney announced his intention of cooperating with state officials in the prosecution of cases in a general field of criminal law presents a situation devoid of legal significance as a joint state and federal endeavor." 357 U. S., at 380.

I dissented from that decision on the ground that the state court had decided that the federal privilege did not obtain on the seemingly false premise that information adduced in the state proceeding could not be used against the petitioner in a subsequent federal prosecution. But even accepting, for the purpose of argument, the validity of the *Knapp* result, I am of the view that the question which was not answered there should be considered here and resolved in favor of the petitioners.

The *Knapp* decision when taken in conjunction with *Feldman* v. *United States,* 322 U. S. 487, means that a person can be convicted of a federal crime on the basis of testimony which he is compelled to give in a state investigation. This opens vast opportunities for calculated efforts by state and federal officials working together to force a disclosure in a state proceeding and to convict on the basis of that disclosure in a federal proceeding. Such opportunities will not go unused unless the courts are vigilant to protect the rights of persons who find them-

selves faced with such coaction of federal and state prosecuting agencies. Such vigilance becomes increasingly required as the Federal Government, through prosecutions for tax evasion, moves into the criminal areas regulated by the States.*

In the instant case the record shows clearly that state and federal authorities had launched a coordinated investigation into the suspected bribery by gamblers of New Orleans' police officers. The State was interested primarily in the enforcement of its public bribery statutes. The Federal Government sought to apprehend tax evaders. The state and federal agencies involved in this twofold investigation collaborated to obtain desired ends. Policemen suspected of taking bribes and gamblers suspected of giving them were called for questioning. Both were in jeopardy of prosecution: the police under state statute for taking bribes and under federal statute for income tax evasion; the gamblers under state statute for giving bribes and under federal statutes for income tax evasion and for failure to pay the special stamp and excise taxes levied on gambling operations. Doubt which might have existed concerning federal interest in petitioners' possible tax evasions was removed when petitioners were induced to waive the statute of limitations for relevant tax years.

The opinion in the *Knapp* case states that the protection of the Fifth Amendment comes into play if a federal officer is a party to the compulsion of testimony by a state agency. 357 U. S. 371, 380. The threshold question then is whether the requisite relationship existed between the State District Attorney and the United States At-

---

*Cf. *Commissioner* v. *Wilcox,* 327 U. S. 404; *Rutkin* v. *United States,* 343 U. S. 130; *United States* v. *Calamaro,* 354 U. S. 351; *Rollinger* v. *United States,* 208 F. 2d 109; *Berra* v. *United States,* 221 F. 2d 590; *Schira* v. *Commissioner,* 240 F. 2d 672; *United States* v. *Wampler,* 5 F. Supp. 796; *United States* v. *Iozia,* 104 F. Supp. 846.

torney and Internal Revenue agents. The stipulation, when read in the light of the known facts, adequately shows that federal officers participated in the state action which sought to compel the testimony of petitioners. That stipulation, signed by the state prosecutor, admits of "cooperation," "collaboration," and "conferences." These terms viewed against the background of contemporaneous investigations by a federal grand jury, a state grand jury, the Police Bureau of Investigation of the City of New Orleans, and the Intelligence Division of the Internal Revenue Service, all pointed at a group of persons which included petitioners, require the conclusion that the State was used as an instrument of federal investigation.

I come then to the question left open in the *Knapp* case: whether, where, as here, a State is used as an instrument of federal investigation, witnesses can successfully assert their federal privilege against self-incrimination in state proceedings. *Knapp* v. *Schweitzer, supra,* suggests that where testimony is compelled in such circumstances, the testimony would be inadmissible in a subsequent federal prosecution. See *Byars* v. *United States,* 273 U. S. 28. See also *Feldman* v. *United States,* 322 U. S. 487, 494.. But this is only partial protection. To compel testimony in a federal investigation, a witness must be assured at the outset complete immunity from any prosecution which might result from his compelled disclosures. *Counselman* v. *Hitchcock,* 142 U. S. 547; *Brown* v. *Walker,* 161 U. S. 591; *Blau* v. *United States,* 340 U. S. 159; *Ullmann* v. *United States,* 350 U. S. 422, 430. There is no indication that such protection obtains here—that petitioners are protected from federal prosecutions which might result from their testimony even though that testimony is not admissible in the subsequent proceeding. *Byars* v. *United States, supra,* merely prohibits the introduction of illegally seized evidence and *Knapp* v.

*Schweitzer, supra,* and *Feldman* v. *United States, supra,* speak merely of the non-use of the compelled testimony in a subsequent federal prosecution. None of these cases deals with the fruits of the compelled testimony, and defendants, like petitioners, who are forced to testify under circumstances similar to those here present, are left without the protection against self-incrimination intended by the Constitution. These cases, in my opinion, should be extended to prohibit any prosecution resulting from disclosures compelled under circumstances similar to those which exist here. But this is not an established principle and a witness is entitled to more than hopes of immunity when federal agencies seek to compel incriminatory testimony. Therefore, in my view, petitioners properly invoked their federal privilege against self-incrimination in the present proceeding and the contempts should be discharged. Cf. *Rea* v. *United States,* 350 U. S. 214; *Bartkus* v. *Illinois,* 359 U. S. 121, 164 (dissenting opinion).

MR. JUSTICE DOUGLAS, with whom THE CHIEF JUSTICE and MR. JUSTICE BLACK concur, dissenting.

Petitioners in these cases were summoned before a state grand jury in New Orleans and interrogated concerning bribery of public officials and income tax evasion. They were at the time being investigated by the Federal Internal Revenue Service. Accordingly, they objected to the questions, invoking the Fifth Amendment and stating that the answers to the questions would tend to incriminate them. Their objections were overruled and they were held in contempt for refusal to answer. The Supreme Court of Louisiana refused writs of certiorari, mandamus, and prohibition, finding "no error of law in the ruling complained of." The cases are here on certiorari. 358 U. S. 810.

It has been the prevailing view since *Twining* v. *New Jersey*, 211 U. S. 78, that the guaranty of the Fifth Amendment that no person "shall be compelled in any criminal case to be a witness against himself" is not made applicable to the States through the Fourteenth Amendment. *Adamson* v. *California*, 332 U. S. 46. Under the *Twining* rule, the Louisiana courts, therefore, need not bow to the Fifth Amendment as a requirement read into state law by the Bill of Rights.

. That is not, however, the end of our problem. For the question remains whether a state court can override a claim of *federal* right seasonably raised in the state proceeding, when the failure to recognize the *federal* right will result in its destruction or nullification.

The classical case involves a *federal* right in the conduct of a business, as in the case of the. contractor in *Leslie Miller, Inc.* v. *Arkansas*, 352 U. S. 187, who, having been the successful bidder for federal construction work, could not be subjected to conflicting state licensing requirements. Related cases are in the class of *Service Storage & Transfer Co.* v. *Virginia*, 359 U. S. 171, and *Castle* v. *Hayes Freight Lines,* 348 U. S. 61, which hold that an interstate motor carrier certificate issued by the Interstate Commerce Commission could not be overridden in state proceedings. Litigants asserting federal rights as the basis of a claim (*Testa* v. *Katt*, 330 U. S. 386) or as a defense to a claim under state law (*Miles* v. *Illinois Central R. Co.*, 315 U. S. 698) may do so in state courts which must recognize and protect the federal rights. Chief Justice White stated it as the "duty resting upon" state and federal courts "to protect and enforce rights lawfully created, without reference to the particular government from whose exercise of lawful power the right arose." *Minneapolis & St. Louis R. Co.* v. *Bombolis,* 241 U. S. 211, 223. Litigants, resting on a *federal* right,

need not resort to federal courts to protect those rights where those rights are put in jeopardy in state proceedings.

There is no more apt illustration of that principle than the present case. The Fifth Amendment to the Constitution reserves a twofold *federal* guarantee for every citizen. It protects him from being forced to give testimony in any federal proceeding, criminal or civil (*Counselman* v. *Hitchcock,* 142 U. S. 547, 562; *McCarthy* v. *Arndstein,* 262 U. S. 355, 266 U. S. 34), judicial, investigative or administrative (*Quinn* v. *United States,* 349 U. S. 155, 161; *Smith* v. *United States,* 337 U. S. 137), which might tend to incriminate him. And it also assures that no incriminating information adduced from a defendant involuntarily by anyone, anywhere, may be admitted into evidence against him in any federal prosecution. *Bram* v. *United States,* 168 U. S. 532; *Wan* v. *United States,* 266 U. S. 1. It was to this second principle that the ruling of this Court in *Feldman* v. *United States,* 322 U. S. 487, was unfaithful. As long as that decision is adhered to, the evidence obtained in a state proceeding such as the one in this case can be used in a federal prosecution. It is, therefore, too late to protect the *federal* right if one waits for action by the federal court. The *federal* right is lost irretrievably, if it is not saved by the state court. As stated by the Supreme Court of Michigan in *People* v. *DenUyl,* 318 Mich. 645, 651, 29 N. W. 2d 284, 287:

> "It seems like a travesty on verity to say that one is not subjected to self-incrimination when compelled to give testimony in a State judicial proceeding which testimony may forthwith be used against him in a Federal criminal prosecution." . .

If the dissent in *Feldman* v. *United States, supra,* had prevailed and testimony compelled from a witness in a state proceeding had been barred from use against him when he became a defendant in a federal proceeding, pro-

tection of the *federal* right against self-incrimination could be left to the federal courts. But *Feldman,* until it is overruled, controls the regimes under which state investigations are made and federal prosecutions conducted. As long as it is on the books the only place a witness, who is being examined in state proceedings about matters that may incriminate him under federal laws, can protect his rights against self-incrimination under the Fifth Amendment is in the state courts.

*Knapp* v. *Schweitzer,* 357 U. S. 371, is contrary to the disposition I would make of the present cases. But it is not a principled decision that addressed itself to the proposition that unless the *federal* right is protected in the state proceeding it is lost forever. The opinion in that case was concerned with maintaining the vitality of state investigations. Not once did it mention *Feldman* v. *United States, supra,* nor address itself to the dilemma created by that decision. Nowhere does it explain how in light of *Feldman* v. *United States* the *federal* right can be protected and the vitality of state investigations also maintained. I have said enough to indicate that both cannot be done by affirming these judgments. As long as *Feldman* v. *United States* stands on the books, the state courts should be required to recognize the *federal* right against self-incrimination—lest it be lost forever.