UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

ALICE JOHNSON KEBE, on behalf of
K.J., her minor daughter,
                    *Plaintiff-Appellant,*

            v.

OFFICER BROWN,
                    *Defendant-Appellee,*

            and                              No. 02-2098

JOHN DOE 1-5, Officer, Prince
George's County Police
Department, District VI,
                    *Defendant.*

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Deborah K. Chasanow, District Judge.
(CA-00-1772-DKC)

Argued: September 23, 2003

Decided: January 22, 2004

Before LUTTIG, MICHAEL and GREGORY, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** John Christopher Belcher, Oxon Hill, Maryland, for
Appellant. Jay Heyward Creech, Upper Marlboro, Maryland, for

Appellee. **ON BRIEF:** Rhonda L. Weaver, Associate County Attorney, OFFICE OF LAW, Upper Marlboro, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

This case arises out of a complaint filed by the Appellant, Alice Johnson Kebe ("Kebe"), on behalf of her teenage daughter, K.J., against certain Prince George's County Police Officers. Kebe claimed that the officers,[1] particularly Corporal Parke Brown, violated her daughter's rights under 42 U.S.C. § 1983, and that he committed common law battery and common law defamation, Counts I - III, respectively. The district court granted partial summary judgment in favor of Kebe on Count I, holding that the officers' stop of K.J. violated her rights under § 1983, and the court granted summary judgment in favor of Corporal Brown on Counts II and III, holding that he was immune from suit. The issues of whether Corporal Brown frisked K.J. and whether the frisk caused her any damages were tried by jury. At the conclusion of the trial, the jury found in favor of Kebe and awarded nominal damages in the amount of $1, and the jury declined to award punitive damages. Kebe now appeals. As explained below, we affirm the district court in all aspects.

## I.

Corporal Parke Brown and his partner, Officer Gerald Knight, of the Prince George's County Police Department, responded to a 911 dispatch call on June 14, 1999. The call indicated that four or five young black males, one of whom was carrying a large chain as a weapon, were chasing another black male in a residential area in

---

[1]No John Doe defendant was ever specifically identified or served.

Beltsville, Maryland. After arriving in the vicinity where the boys were allegedly seen, Brown and Knight stopped and exited their police vehicle with their guns drawn. They encountered another group of youths immediately thereafter. Knight frisked a young man who allegedly fit the description of one of the suspects, ran a background check on him, and eventually released him. Then, Brown pointed his gun at the three remaining youths and ordered them to the ground, frisking each for weapons. One of the remaining three youths was K.J. The officers had not received any information about a female being among the group of the alleged perpetrators, yet they proceeded to stop and search her for weapons. At the time of the stop, K.J. was wearing silk boxer shorts, a form-fitting tank top, and ballerina shoes, under which no reasonable officer could have believed a weapon was hidden.

Kebe appeals on the following four grounds: (1) the jury instructions misstated the law and misled the jury, because they inferred that Corporal Brown's liability was undecided; (2) the district court erred by refusing to award Kebe's attorney's fees in response to the parties' cross-motions for sanctions; (3) the district court erred by denying Kebe a hearing on her motion for a new trial; and (4) the district court erred by denying Kebe's post-trial motion for attorney's fees. We reject each ground for appeal and affirm the judgment of the district court.

## II.

Kebe first challenges the district court's jury instructions. Kebe contends that the jury instructions, regarding the state of mind required to establish Corporal Brown's liability for the frisk, were erroneous because the issue of liability had already been decided in Kebe's favor when the Court partially granted her motion for summary judgment. Kebe's contention assumes that because she was awarded partial summary judgment on the unlawfulness of the stop, which presumes that Corporal Brown acted with the requisite mental intent, that Corporal Brown also necessarily acted with the requisite intent regarding the frisk.

Corporal Brown maintains that the jury instructions were not erroneous because the "district court made clear that the issue of liability

was limited to the frisk as the court had already determined the [sic] Brown was liable as to the stop." (Br. for Appellee, at 6.) Moreover, Corporal Brown argues that any error caused by the jury instructions was harmless, because the jury ultimately ruled in Kebe's favor. We agree with Corporal Brown, and hold that the instructions neither misstated the law nor misled the jury.

We begin our analysis by noting that the accuracy and adequacy of jury instructions are reviewed de novo. *United States v. Morrison*, 991 F.2d 112, 116 (4th Cir.), *cert. denied*, 510 U.S. 881 (1993). It is the reviewing court's responsibility to determine whether the instructions as a whole, "adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the [appellant]." *Spell v. McDaniel*, 824 F.2d 1380, 1395 (4th Cir. 1988). In reviewing the "adequacy of [a trial court's] . . . choice of jury instructions," appellate courts accord trial courts considerable discretion. *United States v. Hassouneh*, 199 F.3d 175, 181 (4th Cir. 2000); *see also Bailey v. County of Georgetown*, 94 F.3d 152, 155 (4th Cir. 1996) (same); *Teague v. Baker*, 35 F.3d 978, 985 (4th Cir. 1994) (same). Moreover, a "judgment will be reversed for error in jury instructions 'only if the error is determined to have been prejudicial, based on a review of the record as a whole.'" *Sturges v. Matthews*, 53 F.3d 659, 661 (4th Cir. 1995) (quoting *Wellington v. Daniels*, 717 F.2d 932, 938 (4th Cir. 1983)).

In the instant matter, the district court instructed the jury as follows:

> In this case, it has already been decided that Corporal Brown did not have reason to stop [K.J.], nor cause to frisk her. It is uncontested that the defendant *stopped* [K.J.] and, thus, violated her Fourth Amendment right in that regard. You will have to decide whether he also *frisked* her and, thus, violated her Fourth Amendment [right] in that fashion also.

> Finally, to establish a claim under Section 1983 *with regard to the frisk* against the defendant, the plaintiff must also show that the defendant acted *intentionally* or *recklessly*. If you find that the acts of the defendant were merely negli-

gent, then, even if you find that the plaintiff was injured as
a result of those acts, you must return a verdict for the
defendant.

An act is *intentional* if it is done knowingly, that is, if it is
done voluntarily and deliberately, and not because of mis-
take, accident, negligence or other innocent reason.

(J.A. 237-38) (emphasis added). The court also defined the *mens rea*
elements for "reckless,"[2] and "negligent"[3] behavior in the instructions
to the jury. *Id.*

We find no error in the instructions given to the jury. In fact, this
Court upheld similar jury instructions in *Sturges v. Matthews*, 53 F.3d
659 (4th Cir. 1995). In *Sturges*, the personal representative of a sus-
pect, who died after losing control of his vehicle while being chased
by the police, brought a § 1983 action against the deputy sheriff, the
county, and the county sheriff. At the trial, the jury was instructed, in
part, as follows: "In the event you find based upon a preponderance
of the evidence that the plaintiff has not proved that the defendant
. . . acted intentionally or willfully and thereby violated the constitu-
tional rights of the decedent, then you would find for the defendant."
*Sturges*, 53 F.3d at 662. The personal representative appealed, chal-
lenging the portion of the jury instructions that required the jury to
find that the government actor had committed an *intentional* or *willful*
act. *Id.* at 661. We upheld the instructions on appeal, concluding that
they "were not misleading and contained an adequate statement of the
law to guide the jury's determination." *Id.* at 662. In fact, we noted
that the district court's instructions "repeatedly emphasized the
*Brower* requirement. . . ." *Id.* In *Brower v. County of Inyo*, the
Supreme Court held that in order to find a Fourth Amendment viola-
tion, "an *intentional* acquisition of physical control" is required,
because "the Fourth Amendment addresses 'misuse of power,' not the

---

[2] "An act is reckless if improperly done in conscious disregard of its
known probable consequences." (J.A. 238.)

[3] "An act is negligent if a defendant was under a duty or obligation rec-
ognized by law that required him or her to adhere to a certain standard
of conduct, to protect others against unreasonable risks, and he or she
breached that duty or obligation." (J.A. 238.)

accidental effects of otherwise lawful government conduct." 489 U.S. 593, 596 (1989)(emphasis added)(quoting *Byars v. United States*, 273 U.S. 28, 33 (1927)). Based upon that principle, we affirmed the jury instructions in *Sturges*.

Because the instructions in *Sturges* are very similar to the instructions given by the district court in the present case, we likewise conclude that it was not error for the court to instruct the jury in that manner. Moreover, the district judge made clear in the instructions that the necessary intent pertained *only to the issue of the frisk*, by stating that Corporal Brown had already been found liable for the unreasonable *stop* of K.J. (J.A. 237.) The Court also noted that no determination had previously been made regarding Corporal Brown's mental state as to the *frisk*, and that it was, therefore, the jury's responsibility to determine if Corporal Brown wrongfully *frisked* K.J. Accordingly, we conclude that the jury instructions pertaining to the requisite intent for Kebe's § 1983 claim were not erroneous, because they did not mislead or confuse the jury nor misstate the law.

## III.

Kebe also argues that the district court erred by failing to award her attorney's fees as requested in her motion for sanctions, filed pursuant to Rule 37 of the Federal Rules of Civil Procedure. In her motion for sanctions, Kebe alleged that Corporal Brown's counsel committed discovery violations concerning one of his key witnesses. Therefore, she requested, as one possible sanction, that Appellee be made to pay her attorney's fees. A magistrate judge conducted a hearing pertaining to the parties' cross-motions for sanctions, and the judge denied both motions, finding no factual support for either. Kebe never filed an objection to the magistrate judge's ruling.

Rule 72 of the Federal Rules of Civil Procedure states that a party must file and serve a written objection to a magistrate judge's order on a nondispositive matter within ten days after being served with a copy of the magistrate judge's order. Fed. R. Civ. P. 72. Thereafter, "a party may not assign as error a defect in the magistrate judge's order to which objection was not timely made." *Id.* The magistrate judge's order disposing of Kebe's Rule 37 motion for sanctions is undoubtedly a nondispositive matter covered by Rule 72. Therefore,

because Kebe failed to file a written objection to the magistrate judge's order, any issues Kebe may have regarding that order have been waived and may not be raised on appeal.

## IV.

Next, Kebe contends that the district court erred by denying her request for an evidentiary hearing in connection with her motion for a new trial. Although Kebe frames this issue as a challenge to the court's denial of her request for an evidentiary hearing, she is essentially arguing that it was error for the district court to deny her motion for a new trial. We review the denial of a motion for new trial for abuse of discretion. *Bristol Steel & Iron Works, Inc. v. Bethlehem Steel Corp.*, 41 F.3d 182, 186 (4th Cir. 1994).

This Circuit has specifically recognized three instances in which an appellate court must set aside a jury verdict and grant a new trial: "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice even though there may be substantial evidence which would prevent the direction of a verdict." *Knussman v. Maryland*, 272 F.3d 625, 639 (4th Cir. 2001) (internal citations omitted); *see Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir. 1996).

As grounds for her motion, Kebe asserts the "prejudice associated with the fact that [her] counsel was forced to spend the weekend immediately preceding trial responding to Brown's motion seeking to bar Kebe from putting on its [sic] evidence of emotional damages, rather than otherwise preparing for trial." (Br. for Appellant at 33.) Kebe refers to Brown's motion *in limine*, which was filed less than a week before trial, in which his counsel sought to bar expert testimony regarding K.J.'s mental state after the June 14, 1999 incident. Kebe's argument most closely falls under the third ground for a new trial; that is by responding to the motion *in limine*, her counsel was taken away from trial preparation, which resulted in a miscarriage of justice.

Kebe's argument is without merit for several reasons. First, it appears from the record that the district court apparently denied

Brown's motion *in limine* because Kebe's witness, Ms. Judith Laverne Conway, was permitted to testify regarding K.J.'s emotional state before and after the June 14, 1999 incident. (Tr. at 28-40, March 6, 2002). Therefore, the court decided the motion *in limine* in Kebe's favor. Second, Kebe has not demonstrated how she was prejudiced by having to respond to Brown's last-minute motion. Kebe fails to detail how her trial preparation was detrimentally interrupted by responding to the motion *in limine*. For those reasons, we conclude that the district judge neither abused his discretion by denying Kebe's motion for a new trial nor her request for an evidentiary hearing regarding the motion. We therefore affirm.

## V.

Lastly, Kebe contends that the district court erred by denying her post-trial motion for attorney's fees, which was filed pursuant to 42 U.S.C. § 1988. We review the denial of a motion for attorney's fees for abuse of discretion. *Johnson v. City of Aiken*, 278 F.3d 333, 336 (4th Cir. 2002). We find no abuse of discretion in the district court's denial of Kebe's motion, and affirm.

The very statute under which Kebe filed her motion states that "the court, *in its discretion, may* allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988 (emphasis added.) In denying Kebe's motion, the district court relied upon *Farrar v. Hobby*, 506 U.S. 103 (1992), and *City of Aiken*. In *Farrar*, the Supreme Court held that a party who receives only nominal damages is still deemed to be a "prevailing party" in the context of awarding attorney's fees under 42 U.S.C. § 1988. 506 U.S. at 113. However, the Court also held that, although the nominal damages does not affect the "prevailing party" analysis, "it does bear on the propriety of fees awarded under § 1988" because the "degree of the plaintiff's overall success goes to the reasonableness of a fee award under *Hensley v. Eckerhart*, 461 U.S. 424 (1983)."[4] *Id.* The petitioners in *Farrar* received only nominal damages, and the Supreme Court affirmed the denial of attorney's fees, holding that "[a] plaintiff who seeks compensatory damages but receives no more

---

[4]In *Hensley*, the Court laid out twelve factors that bear on the reasonableness of an award of attorney's fees. 461 U.S. at 430 n.3.

than nominal damages" is the type of prevailing party that is entitled to "no attorney's fees at all." *Id.* at 115.

In *City of Aiken*, the jury awarded the appellees nominal damages in the amount of thirty five cents, yet awarded "$81,994.61 in attorney's fees and costs." 278 F.3d at 336. When the fee was challenged on appeal, we held, based on the reasoning of *Farrar*, that the "'success' [of the appellees] was not sufficient to justify a § 1988 award." *Id.* at 338 (quoting *Farrar*, 506 U.S. at 115). When a party seeks primarily to recover monetary damages, and is awarded only nominal damages, that party "has succeeded in only a technical sense." *Id.* Accordingly, we vacated the awarding of attorney's fees in *City of Aiken*. Because Kebe sought only monetary damages in her civil rights claim, as opposed to also seeking some form of injunctive relief,[5] she falls squarely within the mandate of *Farrar*, which holds that plaintiffs who seek compensatory and punitive damages, but are only awarded nominal damages, may be denied an award of attorney's fees. Therefore, the district court did not abuse its discretion by denying Kebe's motion for attorney's fees.

## VI.

For the reasons discussed above, we find no reversible error and affirm.

*AFFIRMED.*

---

[5]In her Complaint, Kebe requested $500,000 in compensatory damages and $500,000 in punitive damages. (J.A. at 15.) However, on appeal, she does not challenge the adequacy of the compensatory award, or the failure of the jury to award punitive damages.