**UNITED STATES of America,
Plaintiff,**

v.

**Albert Joseph LONG, Defendant.
No. 22966-1.**

United States District Court,
W. D. Missouri, W. D.

March 24, 1971.

Supplemental Opinion March 29, 1971.

Bert C. Hurn, U. S. Dist. Atty., Anthony P. Nugent, Jr., Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

Ronald M. Sokol, The Legal Aid Society, Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDER

JOHN W. OLIVER, District Judge.

### I.

This case pends on defendant's motion to suppress evidence derived from handwriting exemplars taken from the defendant on July 10, 1969, while he was in State custody and before any warning of any sort was given him by any law enforcement officer. Defendant alleges that the hand-writing samples in question were obtained and seized in a manner inconsistent with and in violation of the Fourth, Fifth, and Sixth Amendments.

Count I of the indictment alleges that the defendant forged the signature of one Melvin T. Harris on a government check in violation of Section 495, Title 18, United States Code. It is anticipated that the Government may adduce evidence by one of its hand-writing experts that the person from whom the exemplars were taken is the same person as the person who signed the payee's name to the check.

In order to place the narrow question presented in precise focus, the Government has stated that it will seek leave to dismiss Count II of the indictment. That motion will be granted.

The parties have also cooperated in an exemplary manner by entering into a stipulation which places the question presented in proper focus, uncomplicated by any collateral questions.

It is agreed that the federal authorities learned that the defendant was wanted on an unrelated state charge (¶ 3 of Stipulation). It is agreed that at that time the Government did not in fact have "probable cause to believe that defendant had endorsed the subject check" (¶ 5 of the Stipulation).

It was under these circumstances that the Treasury Agent accompanied the police officers of Mexico, Missouri, who arrested and placed the defendant in custody on the pending state charge. And it is stipulated that it was only after the defendant was "in custody [that] the defendant executed hand-writing exemplars for the Treasury Agent" (¶ 4 of the Stipulation).

It is further agreed that the defendant was not "advised of his *Miranda* rights" until after the Treasury Agent had obtained the hand-writing exemplars from him (¶ 4 of the Stipulation). When once advised of his rights, the defendant "refused to talk and demanded that an attorney be provided" but "no attorney was provided" (¶ 4 of the Stipulation). If the assumption is made that a *Miranda* warning is sufficient to advise a defendant of his Fourth Amendment rights, as they may relate to hand-writing exemplars, it is difficult not to infer that the defendant, under the stipulated circumstances of this case, would not have also refused to give the Treasury Agent the hand-writing exemplars.

It is also agreed that at no time before the exemplars were taken was the defendant ever "warned that he had a right to refuse to provide hand-writing exemplars" nor was "the defendant advised that he possessed any rights under the Fourth Amendment" (¶ 5 of the Stipulation).

## II.

The narrow question presented is whether the hand-writing exemplars obtained under the foregoing stipulated circumstances may be introduced in evidence and used by the Government's expert witness to support expert testimony that the defendant forged the payee's signature. The defendant's motion to suppress is based on alleged violation of either the Fourth, Fifth, or Sixth Amendments.

The Government relies heavily upon Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). It is clear that that case involved only a claim that the hand-writing exemplars were obtained in violation of the petitioner's Fifth and Sixth Amendment rights. It is not clear from the report of that case whether the defendant had been given a *Miranda* warning before the exemplars were taken. Nor can it be overlooked that in *Gilbert* the Court explicitly stated that "no claim is made that the content of the exemplars was testimonial or communicative matter." *Gilbert* can not properly be considered as authority for denying defendant's Fourth Amendment claim.

*Gilbert* relied upon Schmerber v. California, 384 U.S. 757 at 763–764, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) and United States v. Wade, 388 U.S. 218 at 222–223, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). *Wade*, a line-up case, merely quoted the same distinctions made in *Schmerber* between "communications" and "real or physical evidence." It is true that *Schmerber*, in speaking of the Fifth Amendment, did say that such Amendment "offers no protection against compulsion to submit to *finger printing*, photographing, or measurements, *to write* or speak *for identification*, to appear in court, to stand, to assume a stance, to walk, or make a particular gesture." But *Schmerber* also said by way of dictum that to compel a person to submit to testing by way of a lie detector test was "to evoke the spirit and history of the Fifth Amendment" (384 U.S. at 764, 86 S.Ct. at 1832).

Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), is a Fourth, rather than a Fifth or Sixth Amendment, case. *Bumper* makes clear that "when a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given." And that case pointed out that "this burden can not be discharged by showing no more than acquiescence to a claim of lawful authority" (391 U.S. at 548–549, 88 S.Ct. at 1792).

Under the stipulated facts, it cannot fairly be said that at best, the defendant

did any more than merely acquiesce in the Treasury Agent's claim that he could lawfully demand exemplars from the defendant when he was being held in custody by the state authorities on a state charge. None of the cases relied upon by the Government support the notion that a Treasury Agent can go through all the state correctional institutions throughout the United States collecting handwriting exemplars in regard to cases in which no probable cause exists in regard to the persons from whom samples of handwriting are sought.

## III.

It was not until Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), that the Court dealt with a finger-printing case, a type of evidence which *Schmerber* lumped together with photographing and writing for identification. *Davis* explicitly rejected the argument that finger printing evidence was not subject to the proscriptions of the Fourth Amendment. *Davis* reiterated long established principles when it stated that regardless of how relevant or trustworthy the seized evidence may be, the exclusionary rule fashioned as a sanction for violation of the Fourth Amendment was designed "to redress and deter overreaching governmental conduct prohibited by the Fourth Amendment" (394 U.S. at 724, 89 S.Ct. at 1396). The Mississippi rape conviction was reversed for the reason that the finger prints admitted in evidence were obtained as a product of an unlawful detention of the defendant. It was apparent on the facts of that case, there simply was not probable cause for defendant's arrest.

The argument that "detention for the sole purpose of obtaining finger prints does not require probable cause" was rejected because "to argue that the Fourth Amendment does not apply to the investigatory stage is fundamentally to misconceive the purposes of the Fourth Amendment (394 U.S. at 726, 89 S.Ct. at 1397). The Court pointed out "nothing is more clear than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry, whether these intrusions be termed 'arrests' or 'investigatory detentions.'" (Ibid at 726–727, 89 S.Ct. at 1397).

We believe that *Schmerber* correctly equated finger printing with hand-writing exemplars, although fingerprint evidence is undoubtedly more reliable than hand-writing exemplars. If that proposition is sound, and we believe it is, we cannot see how the principles articulated in *Davis* are not applicable to this case. It being stipulated that there was no probable cause for detention, it is difficult to conceive how it can be said that the hand-writing exemplars taken from the defendant were not the product of the detention which, so far as any federal charge was concerned, could not be said to be lawful.

## IV.

The stipulated facts of this case are clearly distinguishable from cases such as Weaver v. United States (8th Cir., 1967) 379 F.2d 799, in which the defendant gave exemplars after he had been given a *Miranda* warning. They stand only for the proposition that a *Miranda* warning must be considered as sufficient advice in regard to Fourth Amendment rights, as well as Fifth and Sixth Amendment rights.

United States v. Green (S.D.Ind., 1968) 282 F.Supp. 373, pointed out, however, that the distinction made in *Schmerber* between compulsions of a "communicative nature" and those which produce only "real or physical evidence" are quite nebulous. Nevertheless, that Court had no difficulty in refusing to grant the government's motion to require the defendant to submit handwriting exemplars. This does not mean, however, as illustrated by United States v. Doremus (6th Cir., 1969) 414 F.2d 252, that under particular circumstances any protection against being compelled to give a handwriting exemplar may not be waived or that a particular defendant may not voluntarily consent to the giving

of either his fingerprints or handwriting exemplars.

The difficulty with Fourth Amendment cases is twofold. First, slight variations of factual circumstances tend to produce apparently inconsistent results. Secondly, the circumstances of particular cases call into play considerations which sometimes involve, and sometimes do not involve, principles which stem from the Fourth and Fifth, and more recently, the Sixth Amendments. Boyd v. United States, 116 U.S. 616, at 630, 6 S.Ct. 524, at 532, 29 L.Ed. 746, for example, pointed out as early as 1886, that "the fourth and fifth amendments run almost into each other." And, more recently, in Davis v. United States, 328 U.S. 582 at 587, 66 S.Ct. 1256, at 1258, 90 L.Ed. 1453 (1946), the Court noted that the "law of searches and seizures * * * is the product of the interplay of these two constitutional provisions."

This case must be viewed in the perspective of the exclusionary rule established in Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). Mr. Justice Stewart recently made the point in Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), that the federal courts "have operated under the exclusionary rule of *Weeks* for almost half a century; yet it has not been suggested either that the Federal Bureau of Investigation, or that the administration of criminal justice in the federal courts has thereby been disrupted." Director J. Edgar Hoover was quoted in a footnote to that statement in *Davis* as stating that "one of the quickest ways for any law enforcement officer to bring public disrepute upon himself, his organization, and the entire profession is to be found guilty of a violation of civil rights;" and that "our people * * * with unerring instinct, * * * know [that] when any person is intentionally deprived of his constitutional rights those responsible have committed no ordinary offense."

*Elkins,* of course, reiterated that evidence obtained by state officers in violation of the Fourth Amendment is inadmissible if offered in a federal criminal trial. Byars v. United States, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520, long ago decided that participation of a federal agent in a joint operation with state officers must be considered as having the same effect as though the federal agent had engaged in the undertaking as exclusively his own. Gambino v. United States, 275 U.S. 310, 48 S.Ct. 137, 72 L.Ed. 293, is to the same effect.

We are therefore forced back to the proposition that the Treasury Agent in this case participated in a joint operation with state arresting officers which had the practical effect of producing the sort of "investigatory detention" condemned in *Davis* in connection with a federal charge for which the Government has stipulated that it had no probable cause for arresting the defendant. *Davis* states that such "investigatory seizures would subject unlimited numbers of innocent persons to the harassment and ignominy incident to involuntary detention" (394 U.S. at 726, 89 S.Ct. at 1397).

There remains only the question of whether the Government believes that, in spite of the stipulated circumstances, it can justify its action on some theory of consent.

## V.

Government of Virgin Islands v. Berne (3rd Cir., 1969) 412 F.2d 1055, at 1058, we believe properly, states that "consent must never be equated to nonresistance to police orders or suggestions." Such is the command of *Bumper*. We recognize, of course, that it is conceivable that the defendant could have "consented" to giving his hand-writing exemplars. "Consent to search is ordinarily a question of fact." Haire v. Sarver (8th Cir., 1971) 437 F.2d 1262, decided February 5, 1971. The cases reviewing a district court's finding in a "consent to search" case frequently produce split opinions. *Haire* was such a

divided opinion, as was Maxwell v. Stephens (8th Cir., 1965) 348 F.2d 325.

Our difficulty with this case in its present posture is that we are not certain that the parties focused proper attention on the question of whether the defendant may have done more than merely acquiesce in the Treasury Agent's request.

Under the circumstances, we believe it proper not to rule the pending motion on the stipulation but to make inquiry if either party desires the opportunity to adduce further evidence on the consent question. If we were presently required to rule on the basis of the stipulation alone, we believe that we would be required to grant the motion to suppress because the Government has not carried the burden of proof under the standard enunciated in *Bumper*. On the other hand, the Government may have additional evidence which it may wish to adduce to support a factual finding that the defendant, under all the circumstances, did in fact consent to give samples of his hand-writing.

We need not now determine whether the criteria enunciated in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), is the proper measurement of consent, or whether that stated in Wren v. United States, (10th Cir., 1965) 352 F.2d 617 at 618, reflects the proper standard. Perhaps both are applicable, as Judge Lord concluded in United States v. Blalock, (E.D.Pa), 255 F.Supp. 268. We need not and therefore do not presently decide that question.

Under the circumstances, it is

Ordered that counsel for the respective parties immediately arrange a conference with the Court to determine further proceedings in this case.

SUPPLEMENTAL MEMORANDUM AND FINAL ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS

Following our Memorandum and Order of March 24, 1971, a conference was arranged to determine further proceedings in this case. Thereafter, the Court received the following letter from counsel for the government:

After receiving your Memorandum and Order of March 24, 1971, in the above-entitled cause, and pursuant to a conference with court and counsel regarding that Memorandum and Order, we contacted Special Agent Douglas Colquhoun of the United States Secret Service. He advised us that at the time he obtained the handwriting exemplar from defendant Long, Long was sitting in an office in the police station in Moberly, Missouri. Colquhoun advised Long that he was investigating the case of a forged Government check and requested that Long furnish the handwriting samples. He directed Long what to write on the exemplar form.

The check in question was not exhibited to defendant Long until after the handwriting exemplar had been furnished and no other advice was given to defendant Long before or at the time the handwriting exemplar was requested.

Under these circumstances, the Government does not believe that there is need for further evidence since the Government cannot say that these circumstances reflect any more than acquiescence by defendant to the agent's request.

It is apparent that the Government does not have any evidence which could establish any more than acquiescence by defendant to the agent's request. Bumper v. North Carolina, 391 U.S. 543 at 548–549, 88 S.Ct. 1788, 1792, 20 L.Ed. 2d 797, explicitly holds that the burden of establishing consent to justify the lawfulness of a search "can not be discharged by showing no more than acquiescence to a claim of lawful authority." We have concluded that handwriting exemplars are subject to the same Fourth Amendment proscriptions as those applicable to fingerprints under Davis v. Mississippi, 394 U.S. 721,

89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), as we read that case, and we are therefore required to apply the principles of *Bumper* to this case.

Under the undisputed circumstances we must accordingly find and conclude that the Government has not carried the burden of proof which rests upon it to prove consent and that, for the reasons fully stated in our original Memorandum and Order, defendant's motion to suppress should be granted.

It is conceded that the granting of the motion to suppress makes it impossible for the Government to adduce sufficient evidence to support a conviction for the reason that without the use of the handwriting exemplars by the Government's expert witness, it has no evidence that the defendant in fact forged the name of the payee of the check. This case, however, should not be dismissed until the Government is afforded an opportunity to consider whether it wishes to appeal this Court's judgment that the motion to suppress should be granted. The formal order in this case will therefore stay the dismissal of the case until the Government indicates whether it will or will not appeal our order granting defendant's motion to suppress.

It is therefore

Ordered that the defendant's motion to suppress should be and the same is hereby granted. It is further

Ordered that this case, under the undisputed factual situation, should be and is hereby dismissed. It is further

Ordered that the order of dismissal shall be stayed until the Government is afforded a reasonable time within which to determine whether it wishes to perfect an appeal in connection with our order granting defendant's motion to suppress. Said appeal must, of course, be taken within the time permitted by law; but if the Government determines that no appeal is to be taken before the expiration of that time, it shall so advise the Court so that this case not remain on the docket longer than necessary.