UNITED STATES of America,
Appellant,

v.

Leroy HARRIS, Jr., Appellee.

UNITED STATES of America,
Appellant,

v.

Albert Joseph LONG, Appellee.

Nos. 71–1220, 71–1221.

United States Court of Appeals,
Eighth Circuit.

Jan. 12, 1972.

Rehearing and Rehearing En Banc
Denied in No. 71–1220
Feb. 23, 1972.

Anthony P. Nugent, Jr., Asst. U. S. Atty., Kansas City, Mo., Bert C. Hurn, U. S. Atty., Charles E. French, Asst. U. S. Atty., Kansas City, Mo., for appellant.

Ronald Sokol, Kansas City, Mo., for appellee.

Before GIBSON, BRIGHT and ROSS, Circuit Judges.

GIBSON, Circuit Judge.

In these two cases, consolidated here on appeal, the Government appeals under 18 U.S.C. § 3731 from orders entered by the District Court for the Western District of Missouri suppressing as evidence certain handwriting exemplars taken from defendants prior to their being charged with federal crimes, on the basis that the taking of the exemplars violated the defendants' Fourth Amendment rights. Although there is a common question underlying both of these appeals, the facts of each are sufficiently different to warrant separate discussion.

*United States v. Harris—No. 71-1220*

Defendant Leroy Harris is charged with unlawfully taking a letter from the United States mails in violation of 18 U.S.C. § 1702; he has executed a consent to proceedings under the federal Juvenile Delinquency Act.

Harris lives with his mother at 3015 Forest, Kansas City, Missouri, a rooming house where his mother is landlady. On August 6, 1970, the State of Missouri sent an unemployment check payable to Roger Mays, at the above address; Mays was a former tenant of the rooming house, but was not living there at the time. Prior to August 10, 1970, the check was negotiated at a local grocery store by an unknown individual, at which time the check bore the endorsement on the reverse side of "Roger Mayes" followed by the endorsement of "Leroy Harris."

After the check was reported missing, postal inspectors called on the defendant at his home and informed him that they were investigating the theft and forgery of the check. They then asked him to give them handwriting samples using his own name and the name of Roger Mays. He was not informed that he had the right to refuse this request. He complied with the request, provided the sam-ples, and this prosecution followed. At the time Harris was questioned, his mother and stepfather were present in the home.

*United States v. Long—No. 71-1221*

Defendant Long was indicted on two counts of violating 18 U.S.C. § 495, forging and cashing a United States treasury check payable to another; count II (cashing the check) has been dismissed.

According to the stipulated facts of this case, a United States treasury check was mailed to one Malvin T. Harris; Mr. Harris denied receiving the check. The check was negotiated at a liquor store. Clerks at that store informed Secret Service agents that the check was cashed by an unknown person in the company of the defendant Long. The clerks stated that Long was known to them and asked them to cash the check for the other person.

The Secret Service agents then went to Mexico, Missouri, in an attempt to locate Long. Inquiry of the local police revealed that there was an outstanding state arrest warrant for Long, and the local police, accompanied by the Secret Service officers, arrested him on the state warrant. Once in custody, at the local police station, the defendant was asked by the Secret Service agent to provide handwriting samples, which he did; no warnings of any kind were given at this point. After he had provided the exemplars, defendant Long was then advised of his *Miranda* rights. He refused to talk and demanded that an attorney be provided; no attorney was provided. The state charges were later dismissed.

Based on the above facts, the trial court concluded that Long's Fourth Amendment rights had been violated and granted the defense motion to suppress the handwriting exemplars. See, United States v. Long, 325 F.Supp. 583 (W.D. Mo.1971). In the case of defendant Harris, the trial court, by a different judge, felt that consistency with the *Long* case also required suppression.

The question before us, a question to which the Supreme Court has not yet

spoken, is whether law enforcement officers must give a person warnings of his Fourth Amendment rights prior to obtaining a handwriting exemplar from him. While there are no appellate Fourth Amendment handwriting exemplar cases we have found, other Fourth Amendment case precedent in the Circuit Courts of Appeals is mixed; but in general these cases have held that no warnings of Fourth Amendment rights are required where the person is not in custody and there are no other coercive circumstances present which might render a consent to search involuntary; and conversely, where the defendant is in custody and has received full *Miranda* warnings (though not specifically directed to the Fourth Amendment), it has been held that consent to search may be voluntarily given. See, in general: Gorman v. United States, 380 F.2d 158 (1st Cir. 1967); Byrd v. Lane, 398 F.2d 750 (7th Cir. 1968), cert. denied, 393 U.S. 1020, 89 S.Ct. 625, 21 L.Ed.2d 564 (1969); Government of Virgin Islands v. Berne, 412 F.2d 1055 (3d Cir.), cert. denied, 396 U.S. 837, 90 S.Ct. 96, 24 L. Ed.2d 87 (1969); United States ex rel. Combs v. LaVallee, 417 F.2d 523 (2d Cir. 1969), cert. denied, 397 U.S. 1002, 90 S.Ct. 1150, 25 L.Ed.2d 413 (1970); United States v. Goosbey, 419 F.2d 818 (6th Cir. 1970); United States ex rel. Harris v. Hendricks, 423 F.2d 1096 (3d Cir. 1970); Leeper v. United States, 446 F.2d 281 (10th Cir. 1971); United States v. Noa, 443 F.2d 144 (9th Cir. 1971). To the contrary, see Perkins v. Henderson, 418 F.2d 441 (5th Cir. 1969).

On the other hand, it has been held in several cases that where the suspect is in custody, has received no *Miranda* warnings, and is thus subject to the inherently coercive circumstances of custodial interrogation, a warning of Fourth Amendment rights is necessary to insure that a consent to search is informed and voluntary. See Judd v. United States, 89 U.S.App.D.C. 64, 190 F.2d 649 (1951) (Judge Clark dissenting); United States v. Nikrasch, 367 F.2d 740 (7th Cir. 1966); Bretti v. Wainwright, 439 F.2d

1042 (5th Cir. 1971); Bustamonte v. Schneckloth, 448 F.2d 699 (9th Cir. 1971) (state must show defendant gave consent for search, knowing that consent could be withheld). But see, United States ex rel. Lundergan v. McMann, 417 F.2d 519, 521 (2d Cir. 1969) (defendant while in custody of officers may voluntarily consent to search, though no warning similar to *Miranda* warnings were given).

As a preliminary matter, we note that the Government has suggested, though not very strenuously, that there is really no Fourth Amendment question in this case, that the taking of the handwriting exemplars should be considered in light of the Fifth Amendment, and that the Supreme Court has decided that such takings do not violate the Fifth Amendment, citing Gilbert v. California, 388 U. S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). It is true that in *Gilbert* a companion case to United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), the Supreme Court held that the taking of handwriting exemplars from a defendant who was in custody at the time violated neither his Fifth Amendment privilege against self-incrimination nor his Sixth Amendment right to counsel. However, no Fourth Amendment question was raised in that case; and moreover, it appears that Gilbert had received substantial warnings as to his rights prior to the taking of the exemplars, though perhaps they were not specifically directed to the Fourth Amendment. See People v. Gilbert, 63 Cal.2d 690, 47 Cal.Rptr. 909, 408 P.2d 365, 376 (1966).

■ We conclude that the taking of the handwriting exemplars in these cases was a search and seizure under the Fourth Amendment. "A search implies an examination of one's premises *or person* with a view to the discovery of contraband or *evidence of guilt* to be used in prosecution of a criminal action." Haerr v. United States, 240 F.2d 533 (5th Cir. 1957) (emphasis added). As noted in Schmerber v. California, 384 U.S. 757, 767, 86 S.Ct. 1826, 1834, 16 L.Ed.2d 908

(1966), "Such testing procedures plainly constitute searches of 'persons,' and depend antecedently upon seizures of 'persons,' within the meaning of that Amendment." It is clear that the officers were seeking evidence which would connect the defendants to a crime which it was known had been committed. This evidence could not be obtained in the absence of direct cooperation from the defendants. It certainly was not in "plain view," nor was it anything which the defendants had knowingly exposed to the public. The postal inspector who investigated the case against defendant Harris testified that had Harris refused to give the exemplars, "there wouldn't have been a whole lot that I could have done except went away without having handwriting exemplars." It seems difficult to escape the conclusion that the taking of the handwriting exemplars could be accomplished only by a search and seizure of the defendants' persons in the Fourth Amendment sense. The question remains of whether this intrusion was reasonable under the Fourth Amendment.

In Schmerber v. California, *supra,* the Supreme Court held that obtaining blood samples from a defendant constituted a search and seizure. While it could conceivably be argued that the taking of handwriting exemplars differs from taking blood samples in that it does not involve any intrusion beneath the body's surface, this, though a substantial distinction, does not appear to be a determinative one. The search is still for evidence of guilt, the evidence must be obtained from the person of the suspect himself,[1] and it involves some intrusion into the privacy of the person which the Fourth Amendment is intended to protect. Hence, the search, in order to be justified, must comply with the standards of the Fourth Amendment.

The fact that the taking of such identification evidence involves Fourth Amendment questions is recognized by the re-cently proposed Preliminary Draft of Proposed Amendments to the Federal Rules of Criminal Procedure for the United States District Courts (April 1971). A new Rule 41.1 is proposed giving federal magistrates authority to issue orders compelling persons to submit to non-testimonial identification procedures. The orders are hedged with numerous procedural safeguards and can be issued only upon a showing that there is probable cause to believe that an offense has been committed, that there are reasonable grounds to believe that the person named committed the offense, and that the results of the identification procedures will be of material aid in determining whether the person named committed the offense. The Advisory Committee Note makes clear that the proposed rule is intended to conform to the interpretation of the Fourth Amendment by the Supreme Court in Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L. Ed.2d 676 (1969).

In *Davis,* the Supreme Court held that taking a person into custody without a warrant or probable cause for arrest in order to take his fingerprints violated the Fourth Amendment. At the same time, however, the Court recognized that detention for the sole purpose of taking fingerprints might be justified "under narrowly defined circumstances" under the Fourth Amendment upon less than traditional probable cause standards for arrest. However, the Court held such detention must be authorized by a warrant issued by a judicial officer.

The conclusion in *Davis* that a warrant was necessary for detention for the purposes of fingerprinting is consistent with the Court's language in *Schmerber, supra,* discussing the necessity for a warrant in order to conduct blood tests:

"Search warrants are ordinarily required for searches of dwellings, and absent an emergency, no less could be required where intrusions into the hu-

---

1. Of course, other handwriting exemplars might be obtained, e. g. letters, applications and the like, but admittedly these would be more difficult to evaluate than an exemplar of the forged name written by the suspect.

man body are concerned. The requirement that a warrant be obtained is a requirement that inferences to support the search 'be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.' * * * The importance of informed, detached and deliberate determinations of the issue whether or not to invade another's body in search of evidence of guilt is indisputable and great." 384 U.S. at 770, 86 S.Ct. at 1835.

However, in *Schmerber*, the Court concluded that the existence of an emergency justified the warrantless search and "the test was performed in a reasonable manner."

While conceding that there were no warrants for the searches in the instant cases, the Government contends that they nevertheless satisfy the criteria of "reasonableness" under the Fourth Amendment. However, it is now firmly established that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); Root v. Gauper, 438 F.2d 361 (8th Cir. 1971). With this in mind, we look to the facts of the individual cases before us to determine whether they fit any of these exceptions. The only applicable exception is that the exemplars were obtained with the consent of the defendants.

*No. 71–1220—United States v. Harris*

As discussed above, the handwriting exemplars were obtained from defendant Harris at his home by postal inspectors at a time when his parents were present in the home. Prior to obtaining the exemplars, the inspectors informed Harris that they were investigating the theft of a check. The defendant contends that in the absence of warnings he had the right to refuse to provide the samples, there was no knowing and voluntary consent to the search, but merely "acquiescence to a claim of lawful authority," under the holding of Bumper v. North Carolina, 391 U.S. 543, 88 S. Ct. 1788, 20 L.Ed.2d 797 (1968).

■ In considering the claim that this evidence must be excluded from the federal prosecution, we must take note of the Supreme Court's recent admonition that:

"[I]t is no part of the policy underlying the Fourth and Fourteenth Amendments to discourage citizens from aiding to the utmost of their ability in the apprehension of criminals. If, then, the exclusionary rule is properly applicable to the evidence taken * * *, it must be upon the basis that some type of unconstitutional police conduct occurred." Coolidge v. New Hampshire, 403 U.S. 443, 488, 91 S.Ct. 2022, 2049, 29 L.Ed.2d 564 (1971).

We do not think that the conduct of the postal inspectors in visiting Harris at his home and requesting handwriting exemplars to aid in the investigation of the theft and forgery which were known to have occurred can be characterized as "unconstitutional police conduct." Indeed, it appears to be the most logical and reasonable course of conduct to pursue.

On the facts before us in this case, there is not the least suggestion that Harris was subjected to any form of pressure, coercion or duress. He was asked by the inspectors, in the presence of his parents, to provide the exemplars, and he complied. There was no suggestion that he could not refuse. Thus we think the facts are wholly distinguishable from *Bumper*, where the search was made under the purported authority of a search warrant, which of course negates any right of refusal which a party may have. To hold that under these circumstances the evidence is inadmissible would be the equivalent of holding that the police can never obtain evidence of a crime without first warning a person that he does not have to produce that ev-

idence. We do not think such a result is compelled by the Fourth Amendment.

■ Indeed, such a result is not compelled by the Fifth Amendment, and the leading decision thereunder establishing the requirement of warnings, Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). It is to be noted in this connection that the rights protected under the Fifth Amendment are considerably broader, although not more important, than those protected under the Fourth Amendment. For under the Fifth Amendment, the government has no right to compel incriminating statements in any event, regardless of its "reasonableness," whereas under the Fourth Amendment evidence may be compelled by means of a search warrant provided it meets the requisite standards. Yet it has never been held that incriminating statements are not admissible where they have been voluntarily given even under police questioning without warnings where the defendant is not in custody or otherwise subject to coercive circumstances. It follows that evidence obtained by a search and seizure without warnings, but where the defendant is not in custody or otherwise subject to coercive circumstances, is likewise admissible, where it is voluntarily produced.

The reason for this result is well articulated in the Miranda decision:

> "Our decision is not intended to hamper the traditional function of police officers in investigating crime. * * * [I]nvestigation may include inquiry of persons not under restraint. General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement. In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present." 384 U.S. at 477–478, 86 S.Ct. at 1629.

A large volume of litigation following the Miranda decision has been devoted to the question of whether statements which otherwise appear to be voluntary have been elicited while the defendant was in custody or otherwise subject to police pressure, and we have found no cases where the facts are close to those of the instant case which have held that such statements are inadmissible. The only facts relied on by the defendant are that he was a juvenile at the time the exemplars were requested and that they were requested by federal law enforcement officials. We do not think that standing alone these facts are sufficient to render his consent involuntary, in view of the additional facts that the request was made at his home in the presence of his parents. Indeed, we have recently held that under certain circumstances statements made by a juvenile even while he is in a police station in a non-custodial status may be voluntary. See United States v. Tobin, 429 F.2d 1261 (8th Cir. 1970).

Thus we conclude that the decision suppressing the handwriting exemplars in the Harris case must be reversed.

### No. 71–1221—United States v. Long

■ The stipulated facts in this case differ significantly from those in Harris. Here the federal officers were not content to approach the defendant at his home and request the exemplars. Upon discovering an outstanding state warrant for the defendant's arrest, they accompanied the state police officers to his home where he was arrested and brought down to the police station. When he was then in custody, the Secret Service agent informed Long that he was investigating the case of a forged Government check and requested Long to furnish the exemplars. He directed Long what to write on the exemplar form. After the samples were obtained, Long was given his Miranda warnings and questioned. He refused to talk and demanded that an attorney be provided; no attorney was provided.

Under these circumstances, the trial court concluded that the participation of the federal agents in Long's arrest and detention made it a joint operation and hence a federal detention under the standards of Byars v. United States, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520 (1927). Since the Federal Government had no probable cause to arrest Long, it was concluded that the detention insofar as the federal case was concerned could be considered no more than an "investigatory detention" which was condemned in Davis v. Mississippi, *supra,* and hence the evidence seized pursuant to this detention—i. e., the exemplars—must be suppressed unless the Government could establish that they were obtained with the defendant's consent. The trial court thereupon offered the Government the opportunity to offer further evidence which might show consent. The Government responded that it did not "believe that there is need for further evidence since the Government cannot say that these circumstances reflect any more than acquiescence by defendant to the agent's request." The trial court therefore suppressed the evidence. United States v. Long, 325 F. Supp. 583 (W.D.Mo.1971).

We do not understand the Government to contend on appeal that the exemplars were obtained with the defendant's voluntary consent, and in any event we cannot find such consent on the basis of this record. The exemplars were taken from the defendant after he was arrested and in custody and with no warning that he could refuse to give them. This is clearly a situation where the underlying rationale of *Miranda* is applicable, and it would be straining to conclude that his giving of the exemplars was voluntary.

Apparently the Government's complaint is directed toward the trial court's finding that the arrest in this case was a joint operation of the federal officers for which they did not have probable cause, even though the Government concedes at the same time that it did not have probable cause for the defendant's arrest. The Government suggests that this finding is an unwarranted inference from the stipulated facts. However, the inference does appear to be reasonable from the stipulated facts, and after that finding was made, the trial court expressly gave the Government an opportunity to present further evidence which was declined. On appeal the Government does not point out why the inference was unwarranted, it does not suggest how a different inference is a more reasonable one, and does not suggest that even now it could present any evidence which would warrant a contrary finding. Thus, on the basis of this record we must affirm the trial court's decision.

■ We think it important to emphasize here that our decision does not mean that the Government had no right to obtain exemplars of Long's handwriting. But in order to get the evidence, it must comply with the standards of the Fourth Amendment. Thus it could have proceeded as it did in the *Harris* case by approaching the defendant without taking him into custody or subjecting him to any other implied coercion, and requesting the exemplars; if he then provided them they would of course be admissible. Or it could have proceeded as suggested in *Davis* and obtained a warrant for the exemplars. It seems clear to us that while there may not have been probable cause for the defendant's arrest on the check forgery charge, there was clearly probable cause for a search warrant to obtain the exemplars because of Long's nexus with the cashing of the check.[2]

---

2. The following facts could easily be established before a magistrate: (1) that a check had been stolen from the mails, a signature forged on it, and it was cashed; (2) the defendant was present when the check was cashed; (3) the de-

fendant personally requested the check to be cashed; (4) the defendant was known to the person who cashed the check. Under these circumstances, we think a warrant could issue to obtain the handwriting exemplars as evidence of the

We express no opinion as to whether this course is still open to the Government.[3]

The judgment in No. 71–1220 is reversed and remanded for further proceedings. The judgment in No. 71–1221 is affirmed.

crime. Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); Davis v. Mississippi, *supra.*

3. Justice Brennan's majority opinion in Davis v. Mississippi relied on Bynum v. United States, 104 U.S.App.D.C. 368, 262 F.2d 465 (1958) for excluding fingerprint evidence illegally taken even though the same type of evidence may be legally obtained, the rationale there being an enforcement of a deterence sanction on illegal police action. But that opinion further noted that on Bynum's retrial, another set of fingerprints in no way connected with his unlawful arrest was used and he was again convicted with that conviction being affirmed by the Court of Appeals at 107 U.S.App.D.C. 109, 274 F.2d 767 (1960). See Davis v. Mississippi, 394 U.S. at 725–726, n. 4, 89 S.Ct. 1394, 22 L.Ed.2d 676.