**Paulette Renee RINGER, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 71–1595.**

United States Court of Appeals, Eighth Circuit.

Submitted May 9, 1972.

Decided July 5, 1972.

Robert J. Milavetz, Minneapolis, Minn., for appellant.

Peter J. Thompson, Asst. U. S. Atty., Robert G. Renner, U. S. Atty., Minneapolis, Minn., for appellee.

Before MATTHES, Chief Judge, and VAN OOSTERHOUT and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

Paulette Ringer was convicted of uttering a forged United States Treasury check in violation of 18 U.S.C. § 495. She contends on appeal that handwriting exemplars, statements, and testimony relating thereto were inadmissible at her trial because:

(1) they were secured as the result of an unlawful search in violation of her Fourth Amendment rights;

(2) they were taken in violation of her Fifth and Sixth Amendment rights; and

(3) they were taken while she was illegally held in violation of *McNabb, Mallory*,[1] and Rule 5(a), Fed.R.Crim.P.

We affirm the conviction.

A United States Treasury check had been reported missing by the payee. Investigation showed that the check had been deposited in a St. Paul, Minnesota, bank with the endorsements "Ronald J. Brown, pay to the order of Charlotte Jackman" and "Charlotte Jackman". Two government agents determined, after reviewing the files of Roseville, Minnesota, police, that Ringer was a prime suspect in the case. The file contained samples of Ringer's handwriting. The agents interviewed Ringer's state probation officer and viewed samples of Ringer's handwriting in the probation officer's file. After learning Ringer's place of employment, the agents followed her home at 10:30 a. m. They showed her their identification and stated that they wanted to ask a few questions about a United States Treasury check. She said okay and the three went up to Ringer's apartment, where she wrote out four pages of handwriting exemplars upon the agents' request. The agents then give Ringer Miranda warnings. One agent told Ringer that the exemplars looked like the writing on the forged check and asked her if she wished to talk about it. Ringer made an oral statement and a written statement admitting that she forged the check.

Ringer argues that the taking of the exemplars under these circumstances violated her rights under the Fourth Amendment.[2] We disagree.

This case is controlled by United States v. Harris, 453 F.2d 1317 (8th Cir. 1972). There Harris, a juvenile, was interviewed by postal inspectors in his home, with his mother and stepfather present. The inspectors told Harris that they were investigating the theft of a United States Treasury check. They did not give him Miranda warnings and did not inform him of his rights under the Fourth Amendment. Harris agreed to give handwriting exemplars, which were subsequently introduced against him at trial. This Court held that the exem-

---

1. Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957); McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943).

2. Ringer does not claim that Fourth Amendment warnings are required in all cases before a consensual search may be undertaken. She does contend, however, that such a warning was required on the facts of this case.

plars were admissible because the defendant was not in custody or otherwise subject to coercive circumstances, and the exemplars were voluntarily produced.

The facts in the instant case are almost identical to those in *Harris*. Ringer, an adult, was interviewed by the agents in her own home. She was told that they were investigating a United States Treasury check. She was not given Miranda warnings and was not told she could refuse consent. Ringer agreed to the interview and produced the exemplars upon request. Ringer had had prior experience with the police. She contends that, because she was on probation for a state offense, she felt that she had to cooperate with the agents.

■ In our view, there were no coercive circumstances and the agents did nothing which could be characterized as "unconstitutional police conduct". See, United States v. Harris, *supra* at 1321. Ringer's consent was, therefore, voluntary and the search was valid.[3]

Ringer argues that the taking of the exemplars violated her Fifth Amendment right against self-incrimination. She contends that, because she was asked to write "Charlotte Jackman", the exemplars were testimonial rather than physical evidence. She relies on United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); and Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

■ We do not agree. Asking the defendant to write the words which were written on the forged instrument merely provided more reliable physical evidence; it did not change the nature of the evidence. This situation is analogous to that in *Wade* in which the Supreme Court stated:

" * * * [C]ompelling Wade to speak within hearing distance of the witnesses [to the robbery], even to utter words purportedly uttered by the robber, was not compulsion to utter statements of a 'testimonial' nature; he was required to use his voice as an identifying physical characteristic, not to speak his guilt. * * * "

388 U.S. at 222, 87 S.Ct. at 1929.

Finally, Ringer argues that she should have been taken before a magistrate as soon as she was confronted by the agents, rather than after she gave the exemplars.

We find the agents' conduct proper under Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), in which the Supreme Court stated:

" * * * Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction."

385 U.S. at 310, 87 S.Ct. at 417.

■ At the time the agents interviewed Ringer, they had two other suspects in the case. Under these circumstances, the agents were not required to halt their investigation and immediately arrest Ringer. She was taken before a magistrate as soon as she was arrested.

The judgment of conviction is affirmed.

---

3. Ringer argues that the oral and written statements were the fruit of the illegal search on the "cat out of the bag" theory of United States v. Bayer, 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947). Since we believe this search was a valid, consensual search, we do not answer this contention.