UNITED STATES of America,
Plaintiff-Appellee,

v.

Herbert Harvey ROTH, Jr., Defendant-
Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Christopher KEPHART, Defendant-
Appellant.

Nos. 71–1436, 71–1437.

United States Court of Appeals,
Ninth Circuit.

Aug. 16, 1972.

Certiorari Denied Dec. 4, 1972.
See 93 S.Ct. 540, 546.

Robert J. McCrea (argued), of Muld-
er, Morrow & McCrea, Eugene, Or., Wil-
liam A. Brockett, Jr. (argued), Michael
H. Walsh, San Diego, Cal., for appellant.

Shelby Gott, Asst. U. S. Atty.
(argued), Robert H. Filsinger, Joseph
A. Milchen, Asst. U. S. Attys., Harry D.
Steward, U. S. Atty., San Diego, Cal., for
appellee.

Before BARNES and MERRILL, Cir-
cuit Judges, and BYRNE, Jr., District
Judge.*

* Honorable Wm. Matthew Byrne, Jr., United States District Judge, Central District of Cali-
fornia, sitting by designation.

WM. MATTHEW BYRNE, Jr., District Judge:

Defendants Roth and Kephart appeal from a conviction in a jury trial for conspiracy, transportation and smuggling of marihuana under Title 21 U.S.C. § 176a, and concealment and transportation of illegally smuggled dangerous drugs in violation of Title 18 U.S.C. § 545. Roth also appeals his conviction for concealing and transporting heroin in violation of Title 21 U.S.C. § 174.

■ Appellants contend that prejudicial error resulted from the Government attorney's improper and incorrect statement of the law in closing argument and the court's refusal to give a corrective instruction as requested.

The Government presented evidence to establish that the defendants and two other co-conspirators were engaged in smuggling marihuana, dangerous drugs and narcotics into the United States from Mexico and subsequently transporting them from Southern California to Oregon. In their testimony, Roth and Kephart each admitted possession and sale of the marihuana and dangerous drugs in Oregon during the time alleged in the indictment. They both acknowledged awareness that they had violated the criminal laws of Oregon. However, each defendant testified that he did not know that the marihuana or drugs had been illegally imported into this country and denied any knowledge of their foreign origin. Both defendants disavowed participation in any conspiracy to smuggle marihuana. Roth denied knowingly dealing in heroin.

While testifying, Roth pointed to the presence in the courtroom of two peace officers from the State of Oregon whom he believed were "monitoring" his testimony.

In closing argument, Roth's attorney referred to the presence of the Oregon officers and stated that as a result of defendants' testimony, both Roth and Kephart had incriminated themselves under Oregon law and would undoubtedly be prosecuted.[1] Counsel then suggested that if the defendants were acquitted, they would not be "getting away with something" because whatever happened in the federal case, they would be prosecuted and convicted for the Oregon offenses.[2]

Kephart's counsel argued that his client's testimony should be believed since in order to testify to the truth about this case, he had been willing to incriminate himself and be subjected to prosecution in Oregon.[3]

---

1. "Now, there is no question in this case that Mr. Roth is going to be prosecuted and convicted of his activity with regard to the State of Oregon. The Officers sat and listened to the sworn testimony, it was transcribed by the reporter and there is no question that this will occur.

"But the question here is: Has he been guilty of violations that fall within the terms of this case, the charges in this case?"

2. "We know, also, that whatever happens, here, Mr. Kephart and Mr. Roth will be prosecuted, and, undoubtedly, convicted. They don't have any defense, their own sworn statements convict them of violating State offenses. There's no question of that matter.

. . . .

"And I submit that it isn't a situation of someone getting away with something."

3. "Chris [Kephart] took the stand, he told you, candidly, that he broke the law. He told you that he knew he was violating state law, and you remember from something Mr. McCrea [counsel for Roth] asked just a few moments later, there was a couple of peace officers from the State of Oregon present in the courtroom. I think you can reasonably conclude that Chris knew that he was subjecting himself to a serious state prosecution for possession and sale of marijuana in the State of Oregon. But he took the stand and he testified, I submit to you, truthfully and candidly, you will find, as to the extend [sic] of his participation in this alleged conspiracy."

". . . Chris Kephart took the stand and he explained to you his role in this enterprise, and he did so at great cost to himself, but that was his defense, that's the truth, and if the truth means he's going to be subjected to a serious State prosecution, he's willing to pay that price, he's willing to pay that price to tell you the truth here."

In rebuttal to this line of argument initiated by the defendants, Government counsel stated, "You know, let me tell you something, don't be buffaloed by Defense Counsel telling you that they stood up here, and they took the stand, and that they admitted State offenses, and, therefore, if you acquit them of the Federal offenses, they're going to be prosecuted in the State. There's no guarantee that's going to happen. There's no guarantee that's going to happen. First, of all they've got to beat the Federal rap, see, and if they do beat the Federal offense, then their legal defense is double jeopardy. 'We were tried for these Federal offenses in San Diego, you can't prosecute us.' There may be other legal defenses that they raise that you don't know about, like—"

Defendants' objection to the statement concerning double jeopardy was overruled by the trial judge who was of the opinion that the prosecutor was merely suggesting possibilities other than the certainty of prosecution and conviction in Oregon.[4] A subsequent motion for mistrial upon the same grounds was also denied.

In D'Aquino v. United States, 192 F. 2d 338, 367 (9th Cir. 1951), this court said, "The trial judge had an opportunity far superior to that afforded us to judge whether the remarks of counsel in the setting in which they were given constituted such misconduct as to require a more emphatic admonition or instruction to the jury to disregard. . . . Our system of jurisprudence properly makes it a matter primarily for the discretion of the trial court to determine whether prejudicial misconduct has occurred. An appellate court will not review the exercise of the trial court's discretion in such a matter unless the misconduct and prejudice is so clear that it can be said that the trial judge has been guilty of an abuse of discretion." We find no such abuse of discretion in this case. The record indicates that any possible error was planned and invited by Roth and counsel for each defendant. The defendants were not prejudiced by these invited and peripheral remarks of the prosecutor. *See* Ochoa v. United States, 167 F.2d 341 (9th Cir. 1948); United States v. Horne, 423 F.2d 630 (9th Cir. 1970); Keeble v. United States, 347 F.2d 951 (8th Cir. 1965). It was not error to refuse the defendants' requested jury instruction to the effect that double jeopardy was not a bar to successive state and federal prosecutions. The court clarified the matter for the jury by properly instructing them that they were not to be concerned in any way whether a defendant might be subject to prosecution in a state court. The judge who heard what was said and saw what was done is better qualified than we to prescribe adequate remedy.

■ Appellants make a further contention that the court order requiring them to provide handwriting exemplars under threat of contempt citations violated their rights under the Fourth and Fifth Amendments.

4. "THE COURT: Well, it is a legal question, but this is argument, and Counsel has merely suggested possibilities, and I think it should be—a certain amount of latitude in the matter of argument, and it has been allowed in this case."

The counsel for the Government continued:

"There may be other reasons. There may be rules of law which would prevent a successful State conviction for the same offenses that they admitted. So, I mean, don't think—don't let that enter your consideration that they've really—look they've exposed themselves to tell you the truth because they may not have exposed themselves at all for all you know.

There is no guarantee that the State authorities are going to prosecute this case if you cut them loose and find that they didn't—that the Federal elements have not been proven."

After indictment, the Government moved for an order compelling the execution of handwriting and handprinting exemplars by each defendant. Following a hearing, the motion was granted and Roth and Kephart, who were in Oregon, were ordered to execute the exemplars in the office of the United States Attorney in Portland. Defendants appeared but refused to complete the exemplars. Their refusals resulted in their being found in contempt by the United States District Court in Oregon. Thereupon, the defendants agreed to execute the exemplars and the finding of contempt was vacated. During trial, the exemplars were admitted into evidence over defendants'·objections.

Securing exemplars of handwriting or handprinting from a defendant does not violate his right against self-incrimination. Gilbert v. California, 388 U.S. 263, 266, 87 S.Ct. 1951, 1953, 18 L.Ed.2d 1178 (1967); United States v. Beshers, 437 F.2d 450, 451 (9th Cir. 1971) (handwriting); United States v. Rudy, 429 F.2d 993, 994 (9th Cir. 1970) (handprinting). The post-indictment procedures used to obtain these exemplars, which included a court hearing, do not constitute an unreasonable search and seizure in violation of defendants' Fourth Amendment rights. United States v. De Palma, 414 F.2d 394 (9th Cir. 1969); *See* Davis v. Mississippi, 394 U.S. 721, 727, 89 S.Ct. 1394, 22 L.Ed. 2d 676 (1969); United States v. Long, 325 F.Supp. 583 (W.D., Mo. 1971).

Affirmed.

MERRILL, Circuit Judge (dissenting):

I disagree with the majority on the matter of the Government's closing argument. To me it was not invited, was clearly improper, misleading and wholly prejudicial. There was no opportunity to respond to it. In my judgment it demanded a clarifying instruction. I would reverse and remand for new trial.