STATE of Iowa, Appellee,

v.

James Franklin VEST, Appellant.

No. 1–56499.

Supreme Court of Iowa.

Jan. 22, 1975.

Comito, Roehrick & Vincent by James R. Vincent, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Dorothy L. Kelley, Asst. Atty. Gen., Ray A. Fenton, County Atty., and Harold Young, Asst. County Atty., for appellee.

Submitted to MOORE, C. J., and MASON, RAWLINGS, UHLENHOPP and REYNOLDSON, JJ.

RAWLINGS, Justice.

Defendant, James Franklin Vest, appeals from judgment on jury verdict finding him guilty of forgery. We affirm.

When defendant appeared in Des Moines Municipal Court for preliminary hearing Judge Luther Glanton directed Vest to produce a handwriting exemplar. Defendant contended such violated his Fourth Amendment rights, and he thereupon refused to comply with said order. Judge Glanton then granted defendant one day within which to supply the aforesaid exemplar or be held in contempt of court.

After Vest elected to stand on his refusal to furnish the handwriting specimen a show-cause hearing was held and a contempt adjudication followed. Shortly thereafter defense counsel made this statement:

"Comes now the defendant and states to the Court, by and through his counsel, that solely due to the fact that the Court has found him in contempt, he will comply at this time with the Court's wishes and does desire to purge himself of the contempt."

Multiple exemplars were accordingly supplied.

Later an information was filed. Defendant subsequently submitted a pretrial motion, in Polk District Court, to suppress his above noted exemplars. After hearing thereon the motion was overruled.

In course of the ensuing trial Duane Barton, a handwriting expert, appeared as a State's witness. While he was testifying the prosecution offered in evidence Exhibit 5 consisting of the aforesaid exemplars. At that time defendant interposed no objection and trial court voiced no ruling with regard to the offer of Exhibit 5 in evidence.

Later, however, after another witness had taken the stand, trial court inquired as to said exhibit. Defendant's attorney was at that time permitted to postpone any objection thereto.

Subsequently defense counsel made this statement: "Defendant has no objections to Exhibit * * * 5, Your Honor." It was then received in evidence.

Reduced to bare essentials Vest here contends he is entitled to a reversal because, absent a search warrant or, alternatively, in the absence of a showing of reasonableness, his Fourth Amendment rights were violated by compelling him to furnish handwriting exemplars.

■ I. The first question posed is whether defendant preserved error for appellate review.

In State v. Untiedt, 224 N.W.2d 1 (Iowa, 1974), this court said:

"[W]e now hold that where, as here, a defendant's pretrial suppression motion is overruled, appellate review will be accorded on proper assignment as to the record then made despite absence of testimonial objection by defendant in course of trial."

Therefore, if defendant had remained silent regarding the offer in evidence of Exhibit 5 the overruling of his pretrial suppression motion would suffice for purpose of appellate review on the record then made.

But here defense counsel, in course of trial, ultimately stated defendant had no objection to the offered exhibit.

Although not so expressed this might denote a withdrawal of any objection to the exhibit which constituted the basis for defendant's pretrial suppression motion.

On the other hand, it could be reasonably construed as meaning defendant stood on the suppression-related record and elected to enter no further trial objection.

We need not, however, resolve the above countering views.

■ II. Assuming, arguendo, defendant did preserve error by virtue of his pretrial suppression motion, it affords him no basis for reversal.

In entertaining this appeal we must, as aforesaid, review the error asserted in light of the record made upon the suppression motion.

This court is therefore called upon to determine whether the securing of handwriting exemplars from an accused, absent a search warrant or showing of reasonableness, comes within constitutional provisions barring unreasonable searches and seizures.

In United States v. Dionisio, 410 U.S. 1, 8–9, 93 S.Ct. 764, 769, 35 L.Ed.2d 67 (1973), is this statement:

"As the Court made clear in *Schmerber, supra* [384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908], the obtaining of physical evidence from a person involves a potential Fourth Amendment violation at two different levels—the 'seizure' of the 'person' necessary to bring him into contact with government agents, see Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676, and the subsequent search for and seizure of the evidence. In *Schmerber*, we found the initial seizure of the accused justified as a lawful arrest, and the subsequent seizure of the blood sample from his body reasonable in light of the exigent circumstances. And in *Terry* [392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889], we concluded that neither the initial seizure of the person, an investigatory 'stop' by a policeman, nor the subsequent search, a 'patdown' of his outer clothing for weapons, constituted a violation of the Fourth and Fourteenth

Amendments. The constitutionality of the compulsory production of exemplars from a grand jury witness necessarily turns on the same dual inquiry—whether either the initial compulsion of the person to appear before the grand jury, or the subsequent directive to make a voice recording is an unreasonable 'seizure' within the meaning of the Fourth Amendment."

As to the first "level" above noted, no suggestion is here made to the effect defendant's arrest was not lawful or justified. Our review is therefore confined to the constitutionality of a seizure of handwriting exemplars following a valid arrest.

Looking again to United States v. Dionisio, *supra*, 410 U.S. at 14, 93 S.Ct. at 771, the court there further declared:

"In Katz v. United States, *supra* [389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576], we said that the Fourth Amendment provides no protection for what 'a person knowingly exposes to the public, even in his own home or office . . . .' 389 U.S., at 351, 88 S.Ct., at 511. The physical characteristics of a person's voice, its tone and manner, as opposed to the content of a specific conversation, are constantly exposed to the public. Like a man's facial characteristics, or handwriting, his voice is repeatedly produced for others to hear. No person can have a reasonable expectation that others will not know the sound of his voice, any more than he can reasonably expect that his face will be a mystery to the world."

And in United States v. Mara, 410 U.S. 19, 21–22, 93 S.Ct. 774, 775–776, 35 L.Ed.2d 99 (1973), is this apt observation:

"Handwriting, like speech, is repeatedly shown to the public, and there is no more expectation of privacy in the physical characteristics of a person's script than there is in the tone of his voice. See United States v. Doe (Schwartz), 2 Cir., 457 F.2d 895, 898–899; Bradford v. United States, 5 Cir., 413 F.2d 467, 471–472; cf. Gilbert v. California, 388 U.S. 263, 266–267, 87 S.Ct. 1951, 1953–1954, 18 L.Ed.2d 1178. Consequently the Government was under no obligation here, any more than in *Dionisio*, to make a preliminary showing of 'reasonableness.' "

Then in United States v. Hopkins, 486 F.2d 360, 362 (9th Cir. 1973) the Court, noticeably relying in part on *Dionisio, supra*, correspondingly stated:

"Hopkins also claims that the taking of his handwriting exemplars in the absence of counsel violates his Fourth and Fifth Amendment rights. It is well established that the taking of handwriting exemplars from a defendant does not violate his right against self-incrimination and is not an unreasonable search and seizure. See Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 247 (1973), and United States v. Roth, 466 F.2d 1111 (9th Cir. 1972)."

See also United States v. Sedillo, 496 F.2d 151, 152 (9th Cir. 1974); United States v. Osborne, 482 F.2d 1354, 1355 (8th Cir. 1973); United States v. Rogers, 475 F.2d 821, 825 (7th Cir. 1973); United States v. Rabb, 454 F.2d 726 (3d Cir. 1972); United States v. McNeese, 361 F.Supp. 1100, 1101 (E.D.Okl. 1973).

It is to us evident the State was not required to make a preliminary showing of reasonableness, the second level referred to in *Dionisio, supra*, because no expectation of privacy attended Vest's handwriting characteristics. Therefore, defendant's Fourth Amendment rights were not instantly violated.

In light of the foregoing we now hold, on the record as then made, defendant's pretrial suppression motion was properly overruled.

Trial court did not err by permitting the controverted exemplars to be admitted in evidence.

Affirmed.

**154**

All Justices concur, except MASON, J., who concurs specially.

MASON, Justice (concurring specially).

I concur in the result. Although defendant had preserved any alleged error arising from the trial court's ruling on his pretrial motion to suppress, defendant's subsequent response to the court's inquiry during trial as to exhibit 5 presents the question of waiver of his previous objection. I would hold he had withdrawn objection to the exhibit.