UNITED STATES of America

v.

**Dennis McAVOY and Franklin Sebetich.**

Crim. No. 79–227.

United States District Court,
W. D. Pennsylvania.

Feb. 23, 1981.

James Y. Garrett, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

Thomas S. White, Asst. Federal Public Defender, Pittsburgh, Pa., for defendant.

## MEMORANDUM

MARSH, District Judge.

The defendant, Franklin Sebetich, presented a motion and supplemental motion to suppress evidence seized by state police and FBI agents in violation of the Fourth and Fifth Amendments to the Constitution. An evidentiary hearing was held. The court makes the following:

## FINDINGS OF FACT

During the night of November 19 and the early morning of November 20, 1979, three dynamite explosions occurred in the vicinity of Cokeburg Junction, Washington County, Pennsylvania. The explosions damaged a number of houses in the vicinity and damaged railroad tracks used by Conrail in interstate commerce.

The dynamite had been stolen from a place on the property of Bethlehem Mines Corporation by prying up material on the roof. There were motorcycle tracks on the ground in the area.

In the early morning of November 20, several Pennsylvania State Troopers and an FBI agent arrived at the scene to investigate. A resident advised them that a motorcycle had been heard in the vicinity during the time period of the explosions.

At about 7:45 o'clock a. m., Trooper William Fleming recognized the petitioner Franklin Sebetich on a motorcycle with Dennis McAvoy.

Trooper Fleming had an arrest warrant for Sebetich who had previously been charged with receiving stolen goods and possession of a controlled substance. Fleming knew Sebetich. Using a loud speaker, Fleming ordered Sebetich and McAvoy to stop for questioning by the state police. Instead of stopping Sebetich and McAvoy headed the motorcycle in the opposite direction. Fleming pursued them; the motorcycle fell over; McAvoy was arrested; Fleming pursued Sebetich but he escaped in the woods.

McAvoy informed Fleming that Sebetich and his wife lived in McAvoy's mobile home. Additional patrol cars were requested to cover the area of the McAvoy home because it was suspected that Sebetich might return there and obtain a car in which to escape from the area.

Trooper Fleming requested Trooper Mozes to check the McAvoy home and requested FBI Agent Skupien to accompany Mozes for security purposes. Upon arrival at the McAvoy home, they observed a red Chrysler car leaving. Trooper Fleming was notified and he ordered Trooper Mozes to stop the car and see if Sebetich was in the trunk.

Trooper Mozes stopped the car which was being driven by Rose Sebetich McAvoy, a sister of Sebetich and wife of McAvoy. She was driving on the main highway in Cokeburg Junction. Mozes examined her license and registration. The car was registered in the name of John Sebetich. Mozes requested permission to open the trunk. Mrs. McAvoy refused. Mozes and Agent Skupien agreed that a search warrant should be procured for the trunk search.

When other troopers arrived, Agent Skupien departed from the vicinity of the stopped car.

Agent Skupien found a house where he used a telephone to make a lengthy report to FBI headquarters.

In the meantime, Trooper Herbert Paraska went to Magistrate Stephen J. Margo in Washington, Pennsylvania, and made affidavit for a search warrant (Exhibit 3 to the hearing on Motion to Suppress held on January 8, 1981) to search for the body of Franklin Sebetich and dynamite blasting caps in the trunk of the car.

Trooper Paraska and other troopers executed the search warrant at about 11:30 o'clock a. m. Sebetich was not in the trunk of the car. None of the FBI agents participated in the search of the car.

The defendant Franklin Sebetich did not have a legitimate expectation of privacy in the car owned by John Sebetich and in the possession of Rose McAvoy.

The car was impounded by the troopers at the Washington County Police Barracks for dynamite tests.

Trooper Paraska removed a metal crowbar from the trunk of the car which he believed was evidence related to the theft of the dynamite from a place on Bethlehem Mines property where the roof had been pried up by some type of tool.

Meanwhile, Trooper Fleming obtained written consent from Dennis McAvoy to search his home (Exhibit 1 to the hearing on Motion to Suppress held on January 8, 1981). He also was armed with an arrest warrant for Sebetich. Troopers searched the home for Sebetich and confiscated certain items.

None of the FBI agents participated in the search of the McAvoy home.

Troopers Fleming and Paraska saw a pair of bolt cutters on the ground about fifteen feet from the McAvoy home. The bolt cutters were lying near a tool box. McAvoy told the troopers that the bolt cutters and the tool box belonged to Sebetich. Trooper Paraska had observed that the padlock on a gate giving access to the dynamite storage shed had been cut. The troopers seized the bolt cutters.

The FBI agents were not present when the bolt cutters were seized. No FBI agent entered the McAvoy home after his consent to the search had been obtained.[1]

On November 19, 1980, Trooper Fleming telephoned FBI Agent Skupien and requested him to come to the state police barracks. He advised Agent Skupien that the troopers had information as to the whereabouts of the fugitive Sebetich.

Trooper Fleming requested additional manpower with guns. In response, Agent Skupien attended the meeting at the barracks with FBI Agents Kwait and Rescick.

Sebetich and McAvoy had been indicted by a Federal grand jury on December 20, 1979 at Criminal No. 79–227. As of November 19, 1980, both federal and state arrest warrants had long since been issued for the arrest of Sebetich for burglary, theft of dynamite and wrecking a Conrail train.

Nevertheless, Trooper Fleming on November 19, 1980, procured a search warrant from Magistrate Albert Spence in Washington, Pennsylvania, for the body of Franklin Sebetich. The affidavit disclosed probable cause to search the Burgan house for Sebetich (Exhibit 2 to the hearing on Motion to Suppress held on January 8, 1981).

The FBI agents were not present at the Magistrate's office, but they were aware that Trooper Fleming had procured a search warrant.

At the barracks, Trooper Fleming and Agent Skupien discussed the manner in which the troopers and agents would approach the Burgan house. Sergeant Dugan of the state police was in charge.

On arrival at the Burgan house, Kenneth Burgan was standing outside. He was approached by the four troopers and Agent Skupien.

The troopers presented the search warrant. A search of the Burgan house was conducted by four troopers and Agent Skupien.

Troopers Fleming and Dugan arrested Sebetich in the basement of the house hiding under a car with a loaded gun.

The FBI agents entered the Burgan house and participated in the search for stolen personal property pursuant to the search warrant issued by Magistrate Spence.

Agent Skupien carried guns out of the house and gave them to Agent Kwait. He participated in searching, confiscating and listing personal property in the Burgan house. He signed several pages of the inventory.

The FBI agents participated in the search of the Burgan house pursuant to Magistrate Spence's search warrant.

Allegedly, Mr. Burgan gave his oral consent to search his house to the troopers and Agent Skupien. No signed consent was

---

1. Counsel for Sebetich agreed "that we wouldn't have standing to suppress these bolt cutters." Transcript p. 16.

offered in evidence. In the presence of many troopers and three FBI agents it is doubtful that Burgan's consent to search was voluntary.

## CONCLUSIONS OF LAW

1. "... Fourth Amendment rights are personal rights that may not be asserted vicariously ...." *Rakas v. Illinois*, 439 U.S. 128, 133, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978).

■ The search of the car performed by the state police pursuant to a search warrant issued on probable cause and valid under state law was conducted on the Chrysler car, the property of John Sebetich and in the possession of Rose McAvoy Sebetich. Even if the search was illegal, none of the Fourth Amendment rights of Franklin Sebetich were infringed. Franklin Sebetich had neither a property right nor a possessory right in that car. Even had he been a passenger in that car, he would not have been entitled to challenge a search.

The motion to suppress the crowbar as evidence will be denied.

■ 2. The motion to suppress the bolt cutters as evidence will be denied. The bolt cutters were found in the yard, ten or fifteen feet from the McAvoy mobile home for which a search for Franklin Sebetich had been consented to by McAvoy (Exhibit 1 to the hearing on Motion to Suppress held on January 8, 1981). McAvoy could legitimately consent to the officer's search. *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).

Consent by a third party occupant of property, McAvoy, validates the seizure of Sebetich's bolt cutters found thereon. *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).

The bolt cutters were found on the ground in an open area rather than some place where Sebetich could assert he had a special right of privacy.

Troopers Paraska and Fleming were lawfully present in the area of the McAvoy house since Trooper Fleming was armed with an arrest warrant for Sebetich. They

were likewise lawfully present in the McAvoy home and curtilage surrounding it. The bolt cutters belonging to Sebetich were in plain view on the ground ten or fifteen feet from the house and near a tool box also belonging to Sebetich. The incriminating nature of the bolt cutters was immediately apparent to Trooper Paraska who had observed that a padlock on the gate giving access to the dynamite storage area had been cut.

It is our opinion that the troopers were lawfully present in the McAvoy house and upon the curtilage and access thereto. Police are excused from obtaining a warrant under the exception known as the "plain view" doctrine. *United States v. Rodriguez*, 596 F.2d 169, 175 (6th Cir. 1979).

The state police armed with an arrest warrant for Sebetich had a right to enter and leave the home. They had a right to search the area for the fugitive. The evidence was in plain view and thus subject to seizure. *United States v. Phillips*, 593 F.2d 553, 556 (4th Cir. 1978); Cf. *Coolidge v. New Hampshire*, 403 U.S. 443, 465–467, 91 S.Ct. 2022, 2037–2039, 29 L.Ed.2d 564 (1971).

■ 3. The search of the Burgan house was conducted on November 19, 1980 pursuant to a search warrant issued by Magistrate Albert Spence in Washington, Pennsylvania. A Pennsylvania magistrate's court is not a court of record. Since FBI Agents Skupien, Kwait and Rescick participated in the search of the Burgan house, the search warrant is invalid under Rule 41, Federal Rules of Criminal Procedure. If a federal agent is invited to participate, the search becomes a joint search and must be tested in a federal prosecution as if it were a federal search. *Byars v. United States*, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed.2d 520 (1927). See also *Lustig v. United States*, 338 U.S. 74, 78–79, 69 S.Ct. 1372, 1374, 93 L.Ed. 1819 (1949). Rule 41 was violated since the warrant was not issued by a court of record. *United States v. Brougher*, 19 F.R.D. 79 (W.D.Pa.1956); *United States v. Donald T. Smith, et al.*, Criminal No. 78–83 (W.D.Pa.); *United*

*States v. Duronio*, Criminal No. 78–192 (W.D.Pa.1978).

The defendant Sebetich and his wife were living in the Burgan house; thus, he had a legitimate expectation of privacy. The evidence of the illegal arrest and search will be suppressed.