**UNITED STATES of America**

v.

**Henry A. HALL and Gregory Kelley.**

**Crim. A. No. 87–217.**

United States District Court,
W.D. Pennsylvania.

Feb. 4, 1988.

William Conley, Asst. U.S. Atty., Pittsburgh, Pa., for U.S.

Thomas Livingston, Pittsburgh, Pa., for Henry A. Hall.

Frank Arcuri, Asst. Fed. Public Defender, Pittsburgh, Pa., for Gregory Kelley.

## OPINION

GERALD J. WEBER, District Judge.

On December 16, 1987, following a hearing on defendants' motion to suppress certain physical evidence, this Court orally entered an order suppressing the evidence. The government thereafter moved for reconsideration of our suppression order. Having given all parties an opportunity to fully brief the issues involved, and provide additional authorities, we will now reconsider that order.

### FINDINGS OF FACT

On Friday, June 5, 1987, officers of the Greentree Police Department obtained a search warrant from Pennsylvania District Justice Gary Zyra to search room 224 of the Residence Inn. The warrant was executed by officers of the Greentree Police Department at approximately 4:00 p.m. the

same date. During the search, the officers seized several items including a large amount of suspected cocaine, drug paraphernalia, cash, and documents. Three occupants of the room, Gregory Kelly, Henry Hall, and Lisa Lyerly were placed under arrest and were informed of their rights.

At sometime during the search of the room, a decision was made to request assistance from the Federal Drug Enforcement Administration (DEA), to field test the suspected cocaine since the Greentree police did not have the capability to do so. Sometime after 5:00 p.m., Special Agent John Guseman of the DEA, arrived at the motel room. When he arrived, the Greentree officers were labeling evidence envelopes and preparing to leave. All the evidence that was to be seized that day, had been seized, and all three suspects had already been placed under arrest. Agent Guseman proceeded to field test the suspected cocaine which the Greentree officers had set aside for testing. The results of his tests revealed that the substance was indeed cocaine. He was present in the room for a maximum of a half hour. Having arrived after the search was completed, he did not take part in or supervise any part of the search. His presence on the scene was solely for the purpose of field testing the already seized powder. All of the seized evidence remained in the possession of the Greentree police.

When the Greentree police left the room they advised the manager that, due to time and manpower problems, they would be returning the following Monday. They designated the room as a crime scene, and requested that it be double locked and that no one be permitted in. The officers left to arraign the individuals arrested. Sometime prior to Monday, June 8, 1988, the officers made a return on the warrant to the district justice with an inventory of the items seized.

On Monday, June 8, 1988, Officer James Markel of the Greentree Police Department accompanied by Agent Guseman returned to the motel, obtained keys for room 224 from a motel employee, and conducted a second search of the room. It is uncontest-ed that Agent Guseman took an active part in the search. During the search various items of clothing and documents were seized by Agent Guseman. Also on June 8, Agent Guseman took possession of the items seized on June 5. At some point the state charges were nol prossed and the federal prosecution was initiated charging Hall and Kelley with one count of conspiracy and one count of possession with intent to distribute cocaine. Prior to the June 8 search, however, there was no discussion between Guseman and the Greentree police regarding the initiation of a federal prosecution.

## DISCUSSION

Fed.R.Crim.P. 41 provides that a search by federal authorities may be authorized by a warrant issued "by a federal magistrate or a judge of a state court of record ...". We are herein presented with a situation where the warrant in question was issued by a Pennsylvania District Justice, which is not a "court of record". *United States v. McAvoy*, 510 F.Supp. 60, 63 (W.D. Pa.1981). We must, therefore, consider whether the evidence seized herein was the result of a joint federal/state search. If so it must be suppressed. *Byars v. United States*, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520 (1926); *Lustig v. United States*, 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819 (1948); and *McAvoy, supra.*

Whether a search conducted pursuant to a state warrant is characterized as a joint federal/state search depends upon the extent federal officers were involved in the search and seizure. Each case will hinge upon its own specific facts. *United States v. Bedford*, 519 F.2d 650 (3d Cir. 1975). As to the June 8, 1987 search we do not hesitate in concluding that it was joint in nature and that the evidence seized in that search must be suppressed. On the other hand, were we to consider the June 5, 1987 search in isolation, we would certainly conclude that it was solely a state search in which the federal agent participated only after the object of the search was completed. See *Lustig*, 338 U.S. at 79, 69 S.Ct. at 1374. Such a conclusion is based upon our

finding present herein each and every indicia of a state search enunciated in *Bedford*, 519 F.Supp. at 654, fn. 1. Specifically, we find:

> (1) the warrant was issued under state law and directed to state officers; (2) the warrant was predicated on probable violation of state narcotics laws; (3) there was no evidence of bad faith on the part of either the state or federal officers; (4) federal agents did not assist in the obtaining of the warrant; (5) there was no evidence that federal agents instigated or supervised the search [to the contrary, the evidence shows that Agent Guseman did not arrive at the scene until the search was completed]; (6) defendant was initially arrested by local police officers; [again, even before Agent Guseman arrived]; (7) the majority of the evidence was found by local officers; [all of the evidence herein, was found by local officers]; and (8) the products of the search, placed in the custody of local police, formed the basis of a state prosecution.

*Id.*

A further question arises, however, of whether we may properly consider the first search in isolation, or whether we must consider the June 8 search as a continuation of one single search begun June 5, and conclude that the whole search has been tainted by Agent Guseman's involvement. Under the circumstances present herein, we find no basis for concluding that the June 5 search should be tainted by Agent Guseman's involvement on June 8. Prior to the June 8 search, the Greentree police made a return on the warrant to the district justice, accompanied by an inventory of the items seized on June 5. Thus the present case is clearly distinguishable from those cases where a federal agent joins in a search already in progress, and before a return on the warrant is made. In those situations it would be impossible to distinguish between those items which were seized prior to the federal participation, and those which were seized after. In such situations it may become necessary to suppress all evidence seized. Here we have no difficulty in distinguishing between the

two. We therefore conclude that the June 5 search has not been tainted by Agent Guseman's participation on June 8, and that any of the items seized on June 5, 1987 may be introduced by the government in this federal prosecution.

An appropriate order will be entered.

### ORDER

AND NOW this 4th day of February, 1988, upon reconsideration, IT IS ORDERED that this Court's Order of December 16, 1987 is VACATED, and that Defendants' Motion to Suppress Evidence is hereby GRANTED only as to physical evidence obtained June 8, 1987, and is DENIED as to physical evidence obtained June 5, 1987.

IT is further ORDERED that the parties shall stand ready to select a jury and proceed to trial on Tuesday, February 16, 1988, at 9:30 a.m.